**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

SONYA RENEE; CANDICE JOHNSON, a
minor, by Sonya Renee, her
guardian ad litem; MARIBEL
HEREDIA; JOSE ALDANA, a minor,
by Maribel Heredia, his guardian
ad litem; B. DOE, a minor, by N.
Doe, her guardian ad litem;
MARIEL RUBIO; DANIELLE RUBIO, a
minor, by Mariel Rubio, her
guardian ad litem; STEPHANIE
RUBIO, a minor, by Mariel Rubio,
her guardian ad litem GUADALUPE
GONZALEZ; DAISY GONZALEZ, a
minor, by Guadalupe Gonzalez,
her guardian ad litem; JAZMINE
JOHNSON, a minor by Deanna
Bolden, her guardian ad litem;
ADRIANA RAMIREZ, a minor, by
Arcelia Trinidad Ramirez, her
guardian ad litem JANE DOE, a
minor, by John Doe, her guardian
ad litem CALIFORNIANS FOR JUSTICE
EDUCATION FUND; CALIFORNIA
ASSOCIATION OF COMMUNITY
ORGANIZATIONS FOR REFORM NOW,
        *Plaintiffs-Appellants,*
        v.

ARNE DUNCAN, in his official
capacity; UNITED STATES
DEPARTMENT OF EDUCATION,
        *Defendants-Appellees.*

No. 08-16661

D.C. No.
3:07-CV-04299-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
February 11, 2009—Stanford, California

Filed July 23, 2009

Before: Dorothy W. Nelson, William A. Fletcher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge D.W. Nelson;
Dissent by Judge W. Fletcher

## COUNSEL

John T. Affeldt and Tara Kini, Public Advocates, Inc., San Francisco, California, for the plaintiffs-appellants.

Alisa B. Klein, United States Department of Justice, Civil Division, Washington, D.C., for the defendant-appellee.

Lisa A. Davis, Wilson Sonsini Goodrich & Rosati P.C., Palo Alto, California, for The National Coalition of ESEA Title I Parents, Inc., et al., as amicus curiae.

Donald B. Verilli, Jr., Jenner & Block LLP, Washington D.C., for Teach for America, et al., as amicus curiae.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Appellants Sonya Renee, et al., appeal the district court's order granting summary judgment in favor of Appellees U.S. Department of Education and Arne Duncan, Secretary of Education[1] (collectively, the "Secretary"). Appellants object to the Secretary's regulation permitting teachers participating in alternative route programs to be considered "highly qualified"

---

[1]Pursuant to Fed. R. App. P. 43(c)(2), Secretary Arne Duncan is automatically substituted for former Secretary of Education Margaret Spellings as Respondent in this case.

under the No Child Left Behind Act ("NCLB"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we vacate the district court's order because appellants lack standing.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Overview of the No Child Left Behind Act

Since 2002, NCLB has served as the current version of the Elementary and Secondary Education Act, first enacted in 1965, which provides the basis for federal education policy. The overarching goal of NCLB is "to ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and state academic assessments." 20 U.S.C. § 6301. NCLB also aims to close the "achievement gap between high and low-performing children, especially the achievement gaps between minority and nonminority students, and between disadvantaged children and their more advantaged peers." *Id.* § 6301(3). Although the standard of proficiency is determined by each state, NCLB mandates that the state deliver to all of its children the resources to meet that standard. *Id.* § 6311(b)(1)(A), (B). The Secretary is vested with the authority to enforce NCLB and may withhold funds or take other enforcement action if a state fails to comply substantially with the Act's requirements. *Id.* § 1234c. However, each state is responsible for ensuring the compliance of its local school districts. *Id.* §§ 1232c, 7844(a).

NCLB distributes funds to states and schools under two sections relevant to this appeal. Title I funds are used to supplement the educational needs of low-income students. *Id.* § 6301 et seq. Title II funds are used to "increas[e] the number of highly qualified teachers in the classroom." *Id.* § 6601(1).

II.  *NCLB Teacher Qualification*s

The Secretary has stated that an essential component of academic achievement and accountability is that students be taught by "highly qualified" teachers. Letter from Margaret Spellings to Chief State School Officers (Oct. 21, 2005), *available at* http://www.ed.gov/policy/elsec/guid/secletter/051021.html. "[T]eacher quality is one of the most important factors in improving student achievement and eliminating these achievement gaps." *Id.*

Congress provided that, by the end of the 2005-06 academic year, only "highly qualified" teachers ("HQT") would instruct core academic classes in states receiving federal funding (the "100% HQT requirement"). 20 U.S.C. § 6319(a)(2)(A).[2] To ensure that states and districts are on track to meet the 100% HQT requirement, NCLB also required that, beginning with the 2002-03 school year, new hires be "highly qualified." *Id.* § 6319(a)(1). It is undisputed that, to date, some of California's school districts have not met the 100% HQT requirement.

States and school districts must develop plans to meet these mandates. *Id.* §§ 6311(a)(1), 6311(b)(8)(C), 6319(a)(2) (state plans); *id.* §§ 6312(b)(1)(N), 6312(c)(1)(I), 6319(a)(3) (local plans). Where states and districts do not meet the 100% HQT requirement, NCLB mandates that "poor and minority children" not be taught by "inexperienced, unqualified, or out-of-field teachers" "at higher rates than other children." *Id.* § 6311(b)(8)(C).

NCLB also contains several reporting requirements. States and school districts are required to report annually accurate

---

[2]"Core academic subjects" are "English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography." 20 U.S.C. § 7801(11); 34 C.F.R. § 200.55(c).

information regarding their progress towards meeting the 100% HQT requirement. *Id.* §§ 6311(h)(1)(C)(viii), 6311(h)(2), 6319(b)(1)(A). States must also provide this information to the Secretary, *id.* §§ 6311(h)(4)(G), 6319(b)(1)(B), who then reports to Congress the nationwide statistics on "highly qualified" teachers, *id.* § 6311(h)(4), (5). Additionally, schools receiving Title I funds must inform a parent when a non-HQT teaches his or her child for more than four weeks. *Id.* § 6311(h)(6)(B)(ii).

### A.   NCLB's Definition of "Highly Qualified"

In addition to requiring that all HQTs have a B.A. and competence in their subject matter, Congress defined "highly qualified" to mean that:

> (i) the teacher has obtained *full State certification as a teacher (including certification obtained through alternative routes to certification)* or passed the State teacher licensing examination, and holds a license to teach in such State, except that when used with respect to any teacher teaching in a public charter school, the term means that the teacher meets the requirements set forth in the State's public charter school law; and

> (ii) the teacher has not had certification or licensure requirements waived on an emergency, temporary, or provisional basis.

20 U.S.C. § 7801(23)(A) (emphasis added). NCLB does not define the term "full State certification."

### B.   The Secretary's Regulation

On December 2, 2002, the Secretary issued final regulations defining the term "highly qualified." 34 C.F.R. § 200.56. The regulation at issue states that a teacher can be "highly

qualified" under NCLB if the teacher "[i]s participating in an alternative route to certification program,"[3] *id.* § 200.56(a)(2)(ii), and demonstrates "satisfactory progress toward full certification as prescribed by the State," *id.* § 200.56(a)(2)(ii)(4) (the "regulation"). The regulation, like 20 U.S.C. § 7801, has other requirements which are not at issue here.

### III.   *California Education Law*

### A.   *Credentials*

In California, a fully certified teacher may work in almost any school district for an extended period of time. California Commission on Teacher Credentialing, Multiple Subject Teaching Credential, Requirements for Teachers Prepared in California (Leaflet No. CL-561C), *available at* http://www.ctc.ca.gov/credentials/leaflets.html. There are two levels of full state certification depending on years of experience. *See id.*; Cal. Educ. Code § 44274.2. A teacher who completes the preparation requirements initially receives a "preliminary" credential, Cal. Educ. Code § 44274.2(a), which is valid for five years, *id.* § 44251(b)(2). These preparation requirements include, *inter alia*, "[s]atisfactory completion of a program of professional preparation," *id.* § 44251(b)(3), which includes "[i]nternship programs," *id.* § 44259(b)(3)(C), or completion of a more traditional program where teaching, training, and education are combined, *id.* § 44259(b)(3)(A), (B). A teacher receives the same preliminary credential regardless of the "program of professional preparation." *Id.* §§ 44259(a), 44274.2. After two years of teaching with the "preliminary" credential, a teacher may receive the "clear" credential, *id.* § 44274.2(c), which is valid for five years but may be renewed, *id.* § 44251(b)(3).

---

[3]Alternative route programs are alternatives to the traditional college-based teacher education program routes for obtaining teacher certification. Amicus curiae Teach for America is one such program.

Below the full credentials are a series of subordinate credentials. *See* A.B. 351, 1997 Reg. Sess., at 2 (Cal. 1997) (teachers in "internships . . . receive systematic support and training as they advance toward full certification"), *available at* http://www.leginfo.ca.gov/pub/97-98/bill/asm/ab_0351-0400/ab_351_bill_19971012_chaptered.pdf; *Bakersfield Teachers Assoc. v. Bakersfield City Sch. Dist.*, 52 Cal. Rptr. 3d 486, 501 (Cal. Ct. App. 2006) (observing that interns have "something less than a regular credential"). The "intern" credential, for example, permits individuals who have not completed their alternative teacher preparation program (i.e. are participating in their programs) to teach only in a single school district, Cal. Educ. Code §§ 44325, 44463, and only for a period of two years, *id.* § 44251(b)(1). Indeed, California law requires that districts hire preliminary or clear credential holders whenever they are available ahead of intern credential holders. *See* Cal. Educ. Code § 44225.7(a), (e).

## B.    *California's NCLB Implementing Regulations*

California has promulgated "highly qualified" teacher regulations in order to implement NCLB. Under California law, "[a] teacher who meets NCLB requirements at the middle or secondary levels is one who . . . [i]s currently enrolled in an approved intern program for less than three years or has a full credential." Cal. Code Regs. tit. 5, § 6110(2).[4]

## IV.  *Proceedings Below*

In August of 2007, appellants—several California public school students and their parents, joined by two California community organizations—brought an Administrative Proce-

---

[4]California has slightly different NCLB requirements for elementary school teachers. For those teachers, a teacher meets NCLB requirements if he is "currently enrolled in an approved intern program for less than three years or has a credential." Cal. Code Regs. tit. 5, § 6101(2). This distinction, however, is immaterial to the resolution of the case.

dure Act ("APA") challenge in the U.S. District Court for the Northern District of California against the Secretary, alleging that the regulation is inconsistent with NCLB, and requesting declaratory and injunctive relief. Appellants allege that they have been harmed by the regulation because, in the years since the regulation was issued, California and its school districts have hired thousands of alternative route participants, allowed these teachers to be concentrated in low-income and minority areas, and treated the teachers as highly qualified for reporting and parental notification purposes.

Both parties moved for summary judgment, and, on June 17, 2008, the district court entered an order granting summary judgment in favor of the Secretary. A timely appeal followed.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 941 n.17 (9th Cir. 2006). "The agency's interpretation of a statute is a question of law reviewed de novo." *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 783 (9th Cir. 1995).

## ANALYSIS

For the first time on appeal, the Secretary argues that appellants' injury is not redressable, and therefore, appellants lack constitutional standing.[5] A "challenge to constitutional standing," however, may be raised any time and must be considered. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1085 (9th Cir. 2003).

---

[5]At the district court, the Secretary raised a different standing argument: that appellants lacked standing because under California law, interns do have full state certification. The Secretary does not raise that argument on appeal.

Appellants argue that the Secretary's regulation of the states, in this case California, has harmed them. Under § 702 of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "To establish standing to sue under the APA, appellants must first meet the 'irreducible constitutional minimum of standing [which] contains three elements: (1) injury in fact; (2) causation; and (3) likelihood that a favorable decision will redress the injury.' " *DBSI/TRI IV Ltd. P'Ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Appellants, as the parties "invoking federal jurisdiction[,] bear[ ] the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

**[1]** A plaintiff meets the redressability test if it is "likely"— not certain—"that the injury will be redressed by a favorable decision." *Id.* (internal quotations omitted); *Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004). Although "[a] purely speculative favorable outcome will not suffice," *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1020 (9th Cir. 2002) (internal quotation omitted), "[p]laintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision," *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1003 (9th Cir. 1998); *see also Utah v. Evans*, 536 U.S. 452, 464 (2002) (redressability met where court-ordered "change in a legal status" results in a "significant increase in the likelihood that plaintiff would obtain relief").

**[2]** If a plaintiff is "an object of the [challenged] action (or forgone action) . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62. "When, however, as in this case, a plaintiff 's asserted injury arises from the government's allegedly unlaw-

ful regulation (or lack of regulation) of *someone else*, much more is needed." *Id.* at 562. As the Supreme Court has stated:

> In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.

*Id.* (internal quotations and citation omitted).

[3] Appellants argue that a declaration stating that the alternative route regulation is "unlawful and void," would likely cause California to cease treating alternative route participants as highly qualified. Both parties agree that whether alternative route participants hold "full State certification as a teacher (including certification obtained through alternative routes to certification)" is a matter of state law. 20 U.S.C. § 7801(23)(A)(i). Thus, redressability turns on whether, absent the regulation, California would consider teachers participating in alternative routes to be fully certified.[6]

---

[6]As an initial matter, the Secretary argues that this court cannot examine California law to determine whether it considers alternative route participants fully certified because "a court cannot properly issue judgments on such matters in the absence of a state defendant." This argument is merit-

[4] Although it seems likely that California treats interns and other alternative program participants differently from fully credentialed teachers, like those holding "preliminary" and "clear" credentials, this does not end the redressability inquiry. The problem here is that because the meaning of full certification is a matter of state law, California could still determine, as it has already, that teachers participating in alternative routes to certification were "highly qualified" even if the federal regulation was declared void. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("[I]t does not suffice if the injury complained of is the result of the *independent* action of some third party not before the court.") (internal quotations omitted); *Lujan*, 504 U.S. at 568-69 (finding redressability lacking because even if the court ordered government to revise the challenged regulation, "this would not remedy respondents' alleged injury" because the third parties affected by the regulation were unlikely to be bound by it). In other words, California could continue to adhere to Cal. Code Regs. tit. 5, §§ 6110, 6101, which state that a teacher "currently enrolled in an approved intern program" "meets NCLB requirements."

We acknowledge that "injury produced by determinative or coercive effect upon the action of someone else" may be sufficient for standing. *Bennett*, 520 U.S. at 169; *Tozzi v. U.S.*

---

less. As a matter of course, federal courts interpret and apply state laws. This is true not only in diversity cases, but also where, as here, a federal question turns on a matter of state law. *See, e.g.*, *De Sylva v. Ballentine*, 351 U.S. 570, 580-81 (1956) (defining the word "children" in a federal statute according to state law); *Desai v. Mukasey*, 520 F.3d 762, 766 (7th Cir. 2008) (federal court applied state criminal law where "there is explicit reference to state law in the text of the [federal] statute"); *Dias v. Elique*, 436 F.3d 1125, 1132 (9th Cir. 2006) (court applied Nevada law in § 1983 action to determine whether a federally recognized property interest and qualified immunity existed); *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343-44 (9th Cir. 1996) (court applied California law to determine whether state law claims arose under federal law for jurisdictional purposes).

*Dep't of Health and Human Servs.*, 271 F.3d 301, 309 (D.C. Cir. 2001) (When "the alleged injury flows not directly from the challenged agency action, but rather from independent actions of third parties, we have required only a showing that the agency action is at least a substantial factor motivating the third parties' actions.") (internal quotations marks omitted).

Appellants argue that if the regulation is voided, California will be obligated to change its regulations accordingly. In other words, alternative route participants may no longer be "highly qualified" under California law. As an initial matter, because California is not party to this suit, and has therefore not offered its views, this court may only speculate what, if anything, California would do.[7]

It is true that, even after acknowledging the regulation's effect of considering participants in alternative programs as "highly qualified teachers," California maintains a distinction between participants and teachers with full credentials. *See* Cal. Code Regs. tit. 5 § 6110 ("A teacher who meets NCLB requirements" is one who either is "currently enrolled in an approved intern program for less than three years *or has a full credential.*") (emphasis added). It is also true that California changed its laws to comply with "NCLB and its implementing regulations" so that interns could be considered "highly qualified" and "meet NCLB requirements." *See id.* §§ 6101, 6110; Cal. Educ. Code. § 44325(f) (requiring Commission on Teacher Credentialing to "ensure that each district internship program . . . provides program elements to its interns as

---

[7]It is worth noting that appellants may be unable to sue California for failure to comply with NCLB. *See, e.g.*, *Newark Parents Ass'n v. Newark Pub. Sch.*, 547 F.3d 199, 214 (3d Cir. 2008) (holding that "Congress did not intend to give individuals a right to enforce . . . [specific] provisions of . . . [NCLB]"); *cf. Flores v. Arizona*, 516 F.3d 1140, 1176 n.47 (9th Cir. 2008), *rev'd and remanded on other grounds*, *Horne v. Flores*, ___ S. Ct. ___, 2009 WL 1789470 (June 25, 2009) (Although the court did "not decide whether NCLB affords an implied right of action," it did "note that some courts have concluded it does not.").

required by the federal NCLB and the implementing regulations"). Appellants argue that because California changed its laws to comply with NCLB and the Secretary's regulations once, it will do so again if the regulation is revoked.

[5] However, appellants cite no other evidence that California will follow the Secretary's lead if the regulation is voided. Beyond the fact that California changed its state regulation to adhere to the Secretary's regulation one time, there is simply no evidence that the revocation of the regulation would have a coercive effect upon California. Although appellants state that California would be obligated to comply because it receives federal funding, Congress has made it clear that the Secretary may not tie federal funding to certification standards. *See* 20 U.S.C. § 7910(a) ("[N]o funds available to the Department or otherwise available under this chapter may be used for any purpose relating to a mandatory nationwide test or certification of teachers or education paraprofessionals."); *id.* § 7910(b) ("The Secretary is prohibited from withholding funds from any State educational agency or local educational agency if the State educational agency or local educational agency fails to adopt a specific method of teacher or paraprofessional certification."). Because it is undisputed that the interpretation of "full State certification" is a matter of state law, and that, therefore, a state can essentially decide what constitutes a "highly qualified teacher," it is unlikely that the revocation of the regulation will have a "coercive effect" upon California. Instead, appellants' injury is likely "the result of . . . [California's] independent action . . . [who is] not before the court." *Bennett*, 520 U.S. at 169 (internal quotations omitted). Accordingly, appellants have failed to meet their burden of establishing redressability.**⁸**

---

**⁸**Although the dissent concludes that appellants have standing, there is no disagreement based on the law. Instead, the panel disagrees as to what the record suggests California would do in the event the regulation is struck down. Nonetheless, it is appellants' burden to establish standing, *Lujan*, 504 U.S. at 561, and we conclude they have failed to carry that bur-

Appellants rely heavily on *Bennett*, but that case is inapposite. In *Bennett*, plaintiffs challenged a Biological Opinion produced by the Fish & Wildlife Service ("FWS") and promulgated pursuant to the Endangered Species Act of 1973 ("ESA"), that would be applied to the Bureau of Reclamation, the agency committing the alleged injury. *Id.* at 157. The Biological Opinion "specif[ied] the impact of such incidental taking on . . . [any threatened] species, any reasonable and prudent measures that . . . [FWS] considers necessary or appropriate to minimize such impact, and set[ ] forth the terms and conditions that must be complied with by the Federal agency to implement [those] measures." *Id.* at 158 (quoting 16 U.S.C. § 1536(b)(4)). The Supreme Court determined that the plaintiffs' harm was redressable. *Id.* at 170. Although the Bureau was "technically free to disregard the Biological

den. It is not just that California could change its state-law definition of "full credential" to include alternative route participants. Even if the regulation was struck down, existing California regulations would continue to credit an intern as "[a] teacher who meets NCLB requirements." Cal. Code Regs. tit. 5, § 6110(2); *see also id.* § 6101(2). California would have to strike down these regulations for appellants to have standing, but nothing requires the state to do so.

The dissent argues that "current California regulations piggy-back on 200.56," and thus, "if 200.56 is struck down[,] . . . an alternative route participant would not be fully certified under NCLB unless and until California takes affirmative action to change its statutes or regulations." We disagree. It may be that sections 6101 and 6110, California's NCLB implementing regulations, were enacted to conform to 200.56. But there is nothing in sections 6101 or 6110 that ties their validity to that of 200.56. Indeed, 200.56 is not mentioned in either section 6101 or 6110, even though these sections were enacted after 200.56. And although a reference to NCLB's statutory definition of "highly qualified," 20 U.S.C. § 7801(23), is included in the "Reference" section of the notes to the statutory text, the "Authority cited" for sections 6101 and 6110 is Cal. Educ. Code § 12001, Cal. Code Regs. tit. 5, § 6110, Note; *id.* § 6101, Note, which gives the State Board of Education authority "to adopt rules and regulations for the allocation of federal funds," but nowhere requires it to conform these "rules and regulations" to the federal regulations, *see* Cal. Educ. Code § 12001.

Opinion and proceed with its proposed action," the Bureau ignored the Biological Opinion "at its own peril (and that of its employees) for any person who knowingly . . . [ignored and acted contrary to the Incidental Take Statement], [wa]s subject to substantial civil and criminal penalties, including imprisonment." *Id.* Here, on the other hand, there are no "substantial civil and criminal penalties." Although appellants argue that California could be swayed because it has "accepted billions of dollars in federal funding," they offer no support for this position, nor does it appear that they could. *See* 20 U.S.C. § 7910(a), (b).

This case is closer to *Lujan*, where respondents challenged a regulation interpreting § 7 of the Endangered Species Act ("ESA"). 504 U.S. at 557-58. Section 7(a)(2) of the ESA requires each federal agency to consult with the Secretaries of Commerce and Interior to ensure that any action funded by the agency is not likely to jeopardize the continued existence or habitat of any endangered or threatened species. *Id.* at 558. The Secretaries issued a revised joint rule limiting the section's geographic scope to the United States and the high seas. *Id.* at 558-59. Respondents sued, claiming that they were injured because the "lack of consultation with respect to certain funded activities abroad increases the rate of extinction of endangered and threatened species." *Id.* at 562. The Supreme Court held, *inter alia*, that Respondents' harm was not redressable. *Id.* As here, Respondents chose to challenge the Secretary's regulation, not the entities actually causing the alleged harm. *Id.* at 568. "Since the agencies funding the projects were not parties to the case, the . . . [court] could accord relief only against the Secretary: He could be ordered to revise his regulation to require consultation for foreign projects." *Id.* "But this would not remedy respondents' alleged injury unless the funding agencies were bound by the Secretary's regulation," which the Court determined they were not. *Id.*

The situation here is similar. This court could order a revision of the regulation, but California is free to disregard the Secretary. It is undisputed that NCLB leaves to the states discretion over which teachers constitute "highly qualified teachers" because "full State certification" is purely a matter of state law. Therefore, appellants have not demonstrated that it is likely the injury they complain of would be redressed by a favorable decision.[9] *See Lujan*, 504 U.S. at 561.

## *CONCLUSION*

We conclude that appellants have failed to meet their burden of establishing redressability. Accordingly, we vacate the district court's order for lack of jurisdiction.

---

[9]Even if appellants could establish sufficient redressability, they would still have to establish sufficient injury. *DBSI/TRI IV Ltd. P'Ship*, 465 F.3d at 1038. Their injury must be "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citations omitted). It is unclear whether fully certified teachers provide a better education than teachers participating in alternative route programs. *Compare* Kati Haycock, GOOD TEACHING MATTERS: HOW WELL-QUALIFIED TEACHERS CAN CLOSE THE GAP 13 (1998) (noting that "[e]ducation courses completed, advanced education degrees, scores on professional knowledge sections of licensing exams, even, interestingly, years of experience . . . [do not] seem to have a clear relationship to student achievement"), *and* Thomas J. Kane, Jonah E. Rockoff, & Douglas O. Staiger, *Photo Finish: Certification Doesn't Guarantee a Winner*, EDUCATION NEXT, Winter 2007, at 64 (2007) (noting that "a teacher's certification status matters little for student learning"), *with* Linda Darling-Hammond, *Access to Quality Teaching: An Analysis of Inequality in California's Public Schools*, 43 SANTA CLARA L. REV. 1045, 1051 (2003) ("National studies have . . . found that differences in teachers' qualifications—including teachers' general ability, knowledge of subject matter, preparation for teaching, and certification status, which reflects aspects of all of these other indicators—show significant effects on student achievement measured at the state, district, school, and individual student levels."). Therefore, appellants may not be able to establish a "real and immediate" injury. However, we need not decide the question of injury in fact because we conclude appellants have failed to show redressability.

VACATED and REMANDED with instructions to dismiss.

---

W. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. I would hold that the appellants have standing to sue under Article III.

The No Child Left Behind Act ("NCLB") includes in its definition of "highly qualified teacher" someone who "*has obtained* full State certification as a teacher (including certification obtained through alternative routes to certification)." 20 U.S.C. § 7801(23)(A)(i) (emphasis added). The regulation challenged in this appeal expands this part of the definition of "highly qualified teacher" to include someone who has not obtained, but is still in the process of obtaining, full state certification. 34 C.F.R. § 200.56. In relevant part, § 200.56 provides, "A teacher meets the requirements [of a highly qualified teacher] if the teacher . . . [i]s participating in an alternative route to certification program under which [t]he teacher . . . *[d]emonstrates satisfactory progress toward full certification* as prescribed by the State[.]" (emphasis added).

NCLB requires states to "ensure that all teachers teaching in core academic subjects within the State are highly qualified." 20 U.S.C. § 6319(a)(2). If a state cannot meet this requirement, it must ensure that "poor and minority children are not taught at higher rates than other children by inexperienced, unqualified, or out-of-field teachers." *Id.* § 6311(b)(8)(C). The practical effect of § 200.56 is to permit a State to hire so-called "alternative route participants" who are still in the process of obtaining full certification, and to then concentrate those alternative route participants in low-income and minority area schools.

Appellants are California public school students and their parents, as well as two community organizations. They allege

that § 200.56 is invalid under NCLB. They further allege that they are injured by § 200.56 because it has resulted in a disproportionately high concentration of alternative route participants in their schools. This, they contend, has resulted in the student appellants receiving poorer quality education than they would otherwise receive.

The Secretary of Education argues that appellants have no standing under Article III. The Secretary does not argue that alternative route participants are as well qualified as fully certified teachers. Rather, he argues that the invalidation of § 200.56 would have no practical effect. This is so, he argues, because under NCLB a state is free to define "full state certification," and once the state has done so the Secretary is required to accept that definition. Therefore, argues the Secretary, even if § 200.56 is declared invalid under NCLB, California is free to change its state-law definition of full certification to include teachers who are only in the process of obtaining that certification. If California does that, it would then be free to hire alternative route participants who are only in the process of obtaining full certification, and then to concentrate them in low-income and minority area schools, without violating NCLB. In the Secretary's view, the likelihood of California changing its definition of full certification in this manner is so high as to deprive the invalidation of § 200.56 of any practical effect.

The Secretary did not make this Article III standing argument in the district court. He makes the argument for the first time on appeal even though the record is, of course, unchanged. The majority agrees with the Secretary's newly forged argument. I do not.

The Department of Education promulgated § 200.56 in December 2002. In February 2004, the California State Board of Education issued regulations based on the expanded definition of highly qualified teachers contained in § 200.56. The new California regulations piggy-backed on § 200.56 to pro-

vide, in relevant part, "A teacher who meets NCLB requirements . . . is one who . . . [i]s currently enrolled in an approved intern program for less than three years *or* has a full credential." Cal. Code Regs. tit. 5, §§ 6101, 6110 (emphasis added). Under the new regulations, an intern who has not yet received a "full credential" from California is deemed to qualify as a "highly qualified teacher" under NCLB by virtue of § 200.56. Significantly, the new California regulations do not change the definition of "full credential" under California law.

The majority concludes that if we were to hold § 200.56 invalid, California would almost certainly change its state-law definition of "full credential" to include alternative route participants who are only in the process of receiving their full credential. There is no basis for that conclusion. It is uncontested that after the passage of NCLB but before the promulgation of § 200.56, California did not change its definition of full credential, even though such a change would have permitted the assignment of disproportionate numbers of alternative route participants to low-income and minority area schools. It is also uncontested that California promulgated its new regulations only after the promulgation of § 200.56, and that when it did so it did not include in the new regulations any change to the state-law definition of full credential. To conclude that California would almost certainly change its definition of full credential after the invalidation of § 200.56, when it has not seen fit previously to make that change, is unsupported speculation.

Alternatively, the majority concludes that California would not need to change its state-law definition of full credential if § 200.56 is invalidated, and that California could simply leave in place its current regulations providing that an alternative route participant satisfies the NCLB requirement for a fully qualified teacher. Maj. Op. at 9477-78 n.8. But this is not true, for the current California regulations piggy-back on § 200.56. If § 200.56 is struck down as inconsistent with NCLB, an

alternative route participant would not be fully certified under NCLB unless and until California takes affirmative action to change its statutes or regulations to provide that an alternative route participant is fully credentialed under state law.

The definition of "full certification" under California law has important consequences beyond compliance with NCLB. Quite independently of NCLB, fully certified teachers in California are hired differently, paid differently, and provided job security differently from teachers who are only in the process of obtaining full certification. It is possible (though, in my view, barely so) that California would change its definition of full credential if § 200.56 is invalidated. The Secretary and the majority point out, correctly, that California has the power under NCLB to change the definition. But there is nothing in this record to show that California is even remotely likely to do so.

I therefore conclude that appellants have shown a sufficient likelihood to satisfy Article III that the invalidation of § 200.56 would affect, to their advantage, the hiring and assignment of alternative route participants in California.