GREENBERG, Circuit Judge,
dissenting.
As the majority has indicated, this matter is before this Court on Ramiro Enrique Rojas’s petition for review of a decision and order of the BIA dated January 17, *221 2012, dismissing his appeal from a decision of an immigration judge (“IJ”) dated September 22, 2011. The case arises from the circumstance that a Pennsylvania state court convicted Rojas, a citizen of the Dominican Republic and lawful permanent resident (“LPR”) of the United States, on the basis of his pleas of guilty to state charges of use/possession of drug paraphernalia and possession of marijuana. Thereafter the Department of.Homeland Security (“Department”) sought to remove Rojas pursuant to . 8 U.S.C. § 1227(a)(2)(B)® by reason of those convictions. Section 1227(a)(2)(B)® provides that:
Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one’s own use of 30 grams or less of marijuana, is deportable.
Although the- Department • later . conceded that Rojas’s conviction for possession of marijuana did not render him removable because it did not pass the 30-gram statutory removable threshold for marijuana, it continued to seek to remove him on the basis of his separate conviction involving drug paraphernalia. Rojas filed a notice to terminate the removal proceedings pending against him before an IJ arguing that his conviction for use/possession of drug paraphernalia under Pennsylvania law did not “relate[ ] to a controlled substance” within the meaning of section 1227(a)(2)(B)® because the Pennsylvania definition of a controlled substance “is more expansive” than that found in 21 U.S.C. §- 802 (the “Controlled Substances Act” or “CSA”) and thus his conviction did not necessarily involve a controlled substance as defined in the CSAApp. at 128 (internal quotation marks omitted). In this regard, Rojas pointed out that the state court record of his conviction did not specify the controlled substance involved in his offense. The IJ denied Rojas’s motion and sustained the controlled substance charge of removability against Rojas and issued a removal order. The BIA dismissed Rojas’s appeal from the IJ’s decision and Rojas then filed a petition for review with this Court. After a panel of this Court heard oral argument but before it issued its opinion the Court on its own initiative ordered that the matter be heard by the Court en banc. Following argument before the en banc Court, the majority now is granting the petition but I am dissenting as I would deny the petition for review.[1]
Ultimately this case presents a single straightforward question: was Rojas’s conviction based on his guilty plea under 35 Pa. Stat. Ann. § 780-113(a)(32) (West 2003) for use/possession of drug paraphernalia a “violation of ... any law of a State ... relating to a controlled substance (as defined by section 802 of Title 21)” under section 1227(a)(2)(B)®. Section 780-113(a)(32) prohibits:
The use of, or possession with intent to use, drug paraphernalia for the purpose *222 of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or-otherwise introducing into the human body a controlled substance in violation of this act.
Pennsylvania courts have held that to sustain a conviction for possession of drug paraphernalia under 35 Pa. Stat. Ann. § 780-113(a)(32), “the Commonwealth must establish that the items possessed, were used or intended to be used with a controlled substance.” Commonwealth v. Torres, 421 Pa.Super. 233, 617 A.2d 812, 815 (1992). Pennsylvania law, in part tracking section 780-113(a)(32), broadly provides that “drug paraphernalia” means:
[A]ll equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.
35 Pa. Stat. Ann. § 780-102(b) (West 2003). A “controlled substance” in Pennsylvania is “a drug, substance, or immediate precursor included in Schedules I through V of [the Pennsylvania Controlled Substance, Drug, Device, and Cosmetic Act].” Id. Under the CSA in 21 U.S.C. § 802(6) “controlled substance” means:
a drug or other substance, or immediate precursor, included in[1] schedule I, II, III, IV, or V of part B of this subchapter. -The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.
Rojas contends that his conviction does not fall within section 1227(a)(2)(B)® because the Department did not establish that the CSA includes the unidentified substance underlying his state-law paraphernalia conviction as a controlled substance.' Specifically, he argues that “in order to prove deportability under [section 1227(a)(2)(B)®, the Department] must show that Mr. Rojas’s criminal conviction Was for possession of a substance that is not only listed under the Pennsylvania controlled substance schedules, but also contained in the federal schedules of the Controlled Substance Act.” Petitioner’s br. at 14. Rojás contends that inasmuch as the record of his conviction does not identify the substance involved in his offense and the Pennsylvania schedules list more substances than their federal counterparts, his conviction is not necessarily one “relating to a controlled substance (as defined in section 802 of Title 21).”
To determine whether Rojas’s drug paraphernalia possession conviction renders him removable pursuant to section 1227(a)(2)(B)®, the Court could “apply a formal categorical approach.”[2] Evanson *223 v. Att’y Gen., 550 F.3d 284, 290 (3d Cir. 2008) (citation and internal quotation marks omitted) (discussing whether an offense of conviction amounts to an aggravated felony under the Immigration and Nationality Act). Under this approach, which the BIA applied, a court “must look only to the statutory definitions of the prior offenses, and may not consider other evidence concerning the defendant’s ... crimes, including ... the particular facts underlying a conviction.” Borrome v. Att’y Gen., 687 F.3d 150, 155 (3d Cir.2012) (citations and alterations omitted). But Rojas-contends that the IJ and BIA should have used a modified categorical approach in which “a limited number of judicially noticeable documents [should be considered] to determine whether the alien was in fact convicted of a removable offense.” Petitioner’s br. at 15. The majority, however, does not reach its result by applying either a formal or modified categorical approach. Rather, it explains that it reaches its result “simply from the text of the law.” Majority typescript at 214-15. But no matter what approach is taken it should be evident that Rojas’s argument is wrong and that the Court should deny his petition for review.
Though I limit my discussion of cases from other courts, our opinion in Borrome requires discussion for, as I will explain, the majority is repudiating a critical portion of that case. In Borrome, in dealing with the relationship between the Federal Food, Drug, and Cosmetics Act (“FDCA”) and the CSA this Court observed that “the BIA has interpreted [‘relating to’] expansively: [t]he ‘relating to’ concept has a broad ordinary meaning, namely, to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.” Bor-rome, 687 F.3d at 160 (quoting Matter of Espinoza, 25 I. & N. Dec. 118, 120 (BIA 2009)) (some internal quotation marks omitted). Moreover, as is particularly significant here the Court in Borrome also pointed out that:
Unless an alien claims that the basis of his alleged removability is ‘a single offense involving possession for one’s own use of 30 grams or less of marijuana,’ § 1227(a)(2)(B)® does not, ask courts to scour an alien’s indictment and sniff out a controlled substance, or otherwise to look to the underlying facts of an alien’s conviction, to determine whether the alien is removable. Such an inquiry would be irrelevant. The important statutory phrase is ‘relating to a controlled substance,’ and it modifies ‘law or regulation. ’ See Mielewczyk v. Holder, 575 F.3d 992, 994 (9th Cir.2009); see also Mizrahi v. Gonzales, 492 F.3d 156, 159 (2d Cir.2007) (noting that 8 U.S.C. § 1182(a)(2)(A)(i)(II), which is the inadmissibility counterpart to 8 U.S.C. § 1227(a)(2)(B)®, ‘applies only if the “law or regulation” violated relates to controlled substances’). An analysis of the laws or regulations of conviction is required. Therefore, our task is to determine whether the FDCA’s wholesale distribution provisions, 21 U.S.C. §§ 331(f) and 353(e)(2)(A), are laws ‘relating to a controlled substance’ not (as the IJ. seems to have believed) whether the facts of Borrome’s conviction ‘re-lat[e] to a controlled substance.’
Id. at 159 (emphasis added). The importance of the foregoing statement in Bor-rome is obvious and if I could I would doubly emphasize the last sentence.
The Pennsylvania drug paraphernalia law stands in the same relationship to section 1227(a)(2)(B)® as the FDCA provisions the Court considered in Borrome as both are “law[s] ... of a State [or] the United States.” Thus, the question before the Court now is whether the Pennsylvania controlled substances paraphernalia pos *224 session law under which Rojas was convicted was a statute relating to a controlled substance as defined in 21 U.S.C. § 802 just as in Borrome the question was whether the FDCA sections violated were laws relating to controlled substances within section 1227(a)(2)(B)(i). On this point notwithstanding the majority’s conclusion there should be no doubt.
In Borrome, an IJ found an alien removable pursuant to 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony in violation of the FDCA as set forth in 21 U.S.C. §§ 331(t) and 353(e). 687 F.3d at 153. The IJ also found the alien removable under section 1227(a)(2) (B) (i) as an alien convicted of violating a law “relating to a controlled substance.” Id. The alien appealed but the BIA summarily affirmed and the alien then filed a petition for review with this Court. Id. at 154. This Court granted the petition and vacated the order of removal, concluding that the FDCA provisions were not laws “relating to a controlled substance” as defined by 21 U.S.C. § 802 under 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i). 687 F.3d at 162-63. Nevertheless, the Court noted that the BIA and several other courts of appeals “have held that a law prohibiting the possession or use of drug paraphernalia is a law ‘relating to a controlled substance,’ ” because “[paraphernalia statutes relate to controlled substances, even though they prohibit the possession of instruments rather than controlled substances themselves, because the possession of an item intentionally used for manufacturing, using, testing, or enhancing the effect of a controlled substance necessarily pertains to a controlled substance.” Id. at 160 (some internal quotation marks omitted).
In Borrome, however, the Court recognized that although the definition of “controlled substance” under a state law need “not map perfectly with the definition of ‘controlled substance’ under the CSA,” id. (some internal quotation marks omitted), “the phrase ‘relating to ... ’ must have limits, lest it be bent beyond all-logical meaning.” Id. at 162. Accordingly, in Borrome the Court held that “the phrase ‘any law ... relating to a controlled substance’ reaches those laws that do not require the actual involvement of a controlled substance for a conviction,” but stated that “we are equally convinced that a law does not automatically come within the ambit of that phrase simply because a conviction may involve a- controlled- substance.” Id. at 161 (emphasis in original). The Court observed that some prescription drugs subject to the proscriptions of the FDCA in 21 U.S.C. §§ 331(f) and 353(e) were also “controlled substances” as defined under the CSA including the powerful opiate Oxycontin, but some, such as Viagra, were not. The Court thus held that “[t]he coincidental possibility that a controlled substance might be involved with the violation of a law or regulation is not enough to make that law or regulation one ‘relating to a controlled substance’ for deportability purposes under § 1227(a)(2)(B)(i).” 687 F.3d at 161-62.
In reaching its conclusion in Borrome with respect to the limits of the CSA, the Court observed that the connection under the FDCA between 21 U.S.C. §§ 331(f) and 353(e) and controlled substance offenses was attenuated, and that although there is a “nexus” between prescription drugs and controlled substances, “[t]o see the connection ...[,] we must rummage through [a] 400-plus page ‘Prescription Drug Product List’ ... and then hunt for a match in the roughly 100 pages of schedules of controlled substances in the Code of Federal Regulations.” Id. at 162. The *225 Court also recognized that those statutes “criminalize a substantial swath of conduct with no nexus to controlled substances as defined in 21 U.S.C. § 802,” id., because those “statutes are blind to whether a particular prosecution involves highly addictive prescription painkillers, or relatively benign prescription shampoos, topical creams, or eye drops.” Id. Thus, the Court was of the view that classifying 21 U.S.C. §§ 331(t) and 353(e) as laws “‘relating to a controlled substance’ would stretch too far the bounds of the phrase ‘relating to.’ ” Id.
Here, however, there is a close nexus between the state crime of use/possession of drug paraphernalia to which Rojas pleaded guilty and the CSA under 21 U.S.C. § 802 because only an infinitesimal portion of the drugs listed as controlled substances in the Pennsylvania schedules do not appear on the federal schedules. As the majority points out the parties agree that at the time of Rojas’s conviction the Pennsylvania controlled substances schedules contained only three narcotics not listed on the federal controlled substances schedules. Majority typescript at 205-06: Indeed, Rojas does not even contend that the drug paraphernalia in his case related to one of this minute fraction. In this vein, the Department argues that Rojas’s state conviction categorically falls within section 1227(a)(2)(B)(i) because “Pennsylvania’s drug schedules . -.. closely mirror the federal ones,” and “the offense of drug paraphernalia is closely linked to the offense of possessing drugs.” Respondent’s br. at 19-20.
Certainly the Department’s assertion with respect to the overlap of controlled substances is correct though the Pennsylvania and federal lists of controlled substances are not precisely identical. In considering this deviation in the schedules the majority misses the forest for the trees in performing a strict one-to-one comparison between the federal and state lists. Congress, moreover, provided for slight variation by referencing “any law or regulation of a State” and then utilizing the broad language of “relating to” concerning controlled substances as defined in federal law. See, e.g., Desai v. Mukasey, 520 F.3d 762, 766 (7th Cir.2008) (“If Congress wanted a one-to-one correspondence between the state laws and the federal CSA, it would have used a word like ‘involving’ instead of ‘relating to,’.... ”).
In any event, even though there were a minute number of substances that at the time of Rojas’s paraphernalia conviction were controlled substances under Pennsylvania law but not under the CSA, section 1227(a)(2)(B)(i) is applicable here. After all, it is clear that, although, as Rojas contends, the Pennsylvania definition of controlled substances goes beyond the federal definition of controlled substances, the Pennsylvania drug paraphernalia law as set forth in 35 Pa.' Stat. .Ann. § 780-113(a)(32) under which Rojas was convicted applies to paraphernalia used in connection to a vast number of controlled substances as defined in 21 U.S.C. § 802. Therefore, Rojas pleaded guilty to a violation of a state law that related to .many controlled substances as defined in 21 U.S.C. § 802.
The interpretation of section 1227(a) (2) (B) (i) that I advance is consistent with the Court’s reading of that section in Borrome and is supported by the “rule of the last antecedent.” That rule, an accepted principle of statutory interpretation, teaches that “a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows.” Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 380, 157 L.Ed.2d 333 (2003) (citation omitted); see also Disabled in Action of Pa. v. SEPTA, 539 F.3d 199, *226 210 n. 13 (3d Cir.2008). Although the rule is not absolute and can be negated “by other indicia of meaning,” the Supreme Court has said that interpreting statutes in conformity with the rule is “ ‘quite sensible as a matter of grammar.’ ” Barnhart, 540 U.S. at 26, 124 S.Ct. at 380 (quoting Nobel-man v. Am: Sav. Bank, 508 U.S. 324, 330, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993)). Moreover, in Barnhart the Supreme Court reversed this Court for failing to adhere to this common rule of English grammar. See id., 124 S.Ct. at 380-81.
Though the majority believes that the rule of the last antecedent supports its result, in fact the majority is making the same grammatical error that this Court made in Barnhart. As stated above, the statutory text in section 1227(a)(2)(B)® at issue reads:
Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one’s own use of 30 grams or less of marijuana, is deportable.
The majority seems to believe that the rule of the last antecedent supports its result because it indicates that the parenthetical, “as defined in section 802 of Title 21,” “affects only its immediate antecedent term, ‘a controlled substance.’ ” Majority typescript at 209. But the problem with the majority’s analysis is that it is considering the last antecedent to “as defined in section 802 of Title 21.” But the fact is that the rule of the last antecedent comes into play in this case when a court considers the last antecedent to the phrase “relating to a controlled substance,” and that antecedent certainly is “any law or regulation of a State, the United States, or a foreign country” and not “convicted of a violation.” After all, it simply cannot be reasonably denied that the statute’s plain language makes clear that the phrase “relating to a controlled substance” does not follow the words “convicted of a violation.” Therefore, regardless of the facts underlying a conviction, if an alien is convicted of a violation of a state law relating to a controlled substance, as surely was the case here given Rojas’s guilty plea for use/possession of drug paraphernalia under 35 Pa. Stat. Ann. § 780-113(a)(32), he is removable. Nothing could be clearer.
In reaching its result the majority is rejecting the plain meaning of section 1227(a)(2)(B)® for it says that “the Department must show that the conviction for which it seeks to deport a foreign national involved or related to a federally-controlled substance.” Majority typescript at 205. But section 1227(a)(2)(B)® says no such thing for what it says is that an alien to be deported must be convicted of a violation of a law “relating to a controlled substance (as defined in section 802 of Title 21).” It is the law that the alien violated not the violation of which the alien was- convicted that must be related “to a controlled substance -(as defined in section 802 of Title 21).” It is obvious that regardless of the substance involved in Rojas’s case he was convicted of violating a law relating to a controlled substance as defined in section 802 of Title 21 and therefore the Court should deny his petition for review.
I think that it is significant that in its opinion the majority indicates that for an individual to be deported, the Department must establish “that the individual it seeks to remove (1) is an alien (2) who at anytime after entering the country violated or attempted to violate a law relating to a controlled substance and (3) that the con *227 trolled substance is defined as such by federal law.” Majority typescript at 209. In this regard, it is clear that the Department did establish that Rojas is an alien who violated a law relating to a controlled substance as that term is defined by federal law even if the particular drug involved in his case did not come within the definition of section 802 of Title 21. In effect the ■ majority is rewriting section 1227(a)(2)(B)(i) by adding the emphasized language so that the section reads as follows:
An alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one’s own use of 30 grams or less of marijuana is deportable, provided that the conviction was for an offense that involved a controlled substance as defined in 21 U.S.C. § 802.
My conclusion with respect to what the majority is actually doing should surprise no one for Borrome explains, “relating to a controlled substance ... modifies ‘law or regulation,’ ” not the facts of the offense. 687 F.3d at 159. Though the majority indicates that it is “embracing]” Borrome, majority typescript at 216, in fact, it is repudiating that case’s critical statement that relates “controlled substance” to “law or regulation” and therefore the majority is making the same mistake that the immigration judge made in Borrome.
Finally, it is important to point out that in this case we are not concerned with a state law the violation of which might involve a controlled substance in an attenuated or happenstance way.' Quite to the contrary, the Pennsylvania law under which Rojas was convicted was aimed at the regulation of controlled substances almost all of which were controlled substances under both Pennsylvania and federal law. Thus, Rojas’s state case did
not involve a statute impacting on controlled substances as a matter of chance as would be, for example, a general shoplifting statute which precluded the shoplifting of any merchandise and without specific reference included controlled substances.[3] If Rojas’s prosecution and conviction had been under such a. statute it would be unreasonable to say that he had been convicted under a law relating to a controlled substance as defined in 21 U.S.C. § 802. See Borrome, 687 F.3d at 162.'
For the reasons I have set forth I dissent from the majority opinion as it is clear that’ the Court should deny Rojas’s petition for review and vacate the stay of removal that it granted on January 31, 2012. Judge Fisher joins in this opinion.
*228 FUENTES, Circuit Judge, with whom McKEE, Chief Judge, and SCIRICA, RENDELL, AMBRO, SMITH, CHAGARES, JORDAN, HARDIMAN, GREENAWAY, Jr., VANASKIE, and SHWARTZ, Circuit Judges join.

. The majority indicates that it does not matter whether it reviews the BIA's legal conclusions de novo or reviews them under the principles that the Supreme Court set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and I agree that the scope of review that the Court uses in this case does not matter for under any approach this Court should deny the petition for review. Unlike-the majority I make scant reference to opinions from other jurisdictions because the meaning of section 1227(a)(2)(B)(i) is clear on its face and in reaching my result I simply rely on the text of the law as written.

. Such an application would be consistent with the Supreme Court's recent holding in Moncrieffe v. Holder, 569 U.S.-, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013), in which the Court applied the formal categorical approach to determine if a conviction for a Georgia state offense constituted "illicit trafficking in a controlled substance,” 8 U.S.C. § 1101(a)(43)(B), and therefore was an “aggravated felony” under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq. As the Court explained, "[w]hen the Government alleges that a state conviction qualifies as an ‘aggravated felony’ under the INA, [it] generally employ[s] a 'categorical approach’ to determine whether the state offense is comparable to an offense listed in the INA.” 133 S.Ct. at 1684 (citations omitted).

. I recognize that in theory there could be a problem if a state nonsensically added a harmless product such as jelly beans to its controlled substances schedules but I decline to reach my result on that chance as Rojas does not contend that any such product is involved here and I see no reason to believe that a state would act in such an irrational way or if it did the addition would survive judicial review. I further realize that, as the majority points out, a state in what might not be regarded as a nonsensical act could "include tobacco in its [controlled substances] schedules.” Majority typescript at 208. Nevertheless, the remote possibility that there could be such an inclusion in a state controlled substances schedule should not control the result in this case for we can be certain that if a state attempts to outlaw the possession or use of tobacco the tobacco industry will not be slow to file a district court action challenging the state law or regulation under, inter alia, the Supremacy and Commerce Clauses. In any event, long experience has taught me not to decide cases to avoid a fictional parade of horribles.