In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1831

UMANG DESAI,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney
General of the United States,

*Respondent.*

———————

Petition to Review an Order of the
Board of Immigration Appeals.
No. A44-828-446.

———————

ARGUED NOVEMBER 30, 2007—DECIDED MARCH 28, 2008

———————

Before EASTERBROOK, *Chief Judge,* and FLAUM and
WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Umang Desai was charged as a
removable alien by the Department of Homeland Security
("DHS") because he was convicted of violating a law
relating to a federal controlled substance. The offense at
issue is an Illinois law that punishes individuals for
distributing substances that substantially resemble con-

trolled substances. Because we find that there is a sufficient connection between these Look-Alike Substances and actual controlled substances, we deny Desai's petition for review.

## I. Background

Umang Desai is a native and citizen of the United Kingdom. He entered the United States as a lawful permanent resident on June 8, 1995, at the age of fourteen. He is unmarried and worked for a contractor at the U.S. General Services Administration in its information technology division, where he had been for six years. Returning from a trip overseas on June 23, 2004, he arrived at Boston International Airport and sought admission as a lawful permanent resident. Desai was not admitted, and DHS placed him in removal proceedings. On November 16, 2004, DHS charged him as a removable alien pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) based on a previous conviction for violating a law relating to a controlled substance. DHS also charged that he had been convicted of a crime involving moral turpitude.

The facts surrounding Desai's underlying offense are not at issue in this matter, but for completeness, we recite them here.[1] One night in the autumn of 2001, Desai met a woman at a nightclub. What Desai did not know was that she happened to be an undercover police officer. Earlier that day, someone gave Desai chocolates which were purported to contain the hallucinogenic drug Psilocybin, more

---

[1] The government has not conceded to the veracity of these facts, which Desai submitted in an affidavit as part of an unsuccessful criminal appeal.

commonly referred to as "shrooms." Back at the nightclub, Desai, who was taken with this woman, offered her the chocolates for free, but she paid him 20 dollars for them and asked if he could get her more. Desai stated that he was not involved in drug trafficking, but gave her his number anyway in the hopes of pursuing a romantic relationship. Some time later, the officer called Desai asking for drugs, but he told her that he could not help her out. He did, however, direct her to an individual named Wayne who could perhaps get her drugs, though he never arranged a meeting between the two.

On March 6, 2002, Desai was charged with Unlawful Delivery of a Look-Alike Substance in violation of Illinois law, 720 ILCS 570/404(b). He pled guilty to this class 3 felony and received probation. Two and a half years later, as we detailed above, DHS charged him with removability. He subsequently appeared before an immigration judge on January 25, 2005. Based on the charge and his plea to the Look-Alike Substance violation, the Immigration Judge ("IJ") ruled that Desai's conviction was a violation of a law "relating to a controlled substance" and that it was a crime involving moral turpitude. Instead of immediately having him removed, the IJ granted Desai a continuance to file a motion to vacate his criminal conviction with the Illinois state court. The Illinois court ultimately denied this motion, and Desai again appeared before the IJ who issued his decision. Based on his findings, the IJ determined that Desai was removable as charged.

Desai then appealed this decision to the Board of Immigration Appeals ("BIA"), arguing that his conviction did not concern controlled substances as defined by the federal Controlled Substances Act ("CSA"), and that his conviction did not constitute a crime involving moral turpitude. The

BIA issued its decision on March 20, 2007. It concluded that Desai's underlying offense did not qualify as a crime involving moral turpitude, but that it was an infraction of state law that related to a controlled substance as set forth in § 1182(a)(2)(A)(i)(II), thereby classifying him as a removable alien.

## II. Discussion

Desai now raises the same issue before this Court: whether his conviction for knowingly distributing a Look-Alike Substance was properly classified as a violation of a state law relating to a controlled substance. What is key in this case is the language of § 1182(a)(2)(A)(i)(II), which states:

> Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a state, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21 [the Controlled Substances Act]), is inadmissible.

Desai submits that the text of this statute indicates that the underlying offense must be one that is related to a controlled substance as defined by the federal Controlled Substances Act. Although the CSA defines Psilocybin as a controlled substance, Desai did not actually distribute Psilocybin, but rather a substance that was a Psilocybin look-alike. Nothing in the drug schedules contained in the CSA classifies a look-alike as a controlled substance, so Desai's crime would not be punishable under the CSA.

Hence, Desai argues, the BIA erred in its determination regarding his removal.

What is missing from Desai's textual argument is that he fails to give effect to the phrase "relating to" in the statute. As noted above, § 1182(a)(2)(A)(i)(II) punishes an individual for violating "any law or regulation of a state, the United States, or a foreign country *relating to* controlled substances . . . ." The BIA correctly determined that the phrase "relating to" is intended to have a broadening effect. The Immigration and Nationality Act does not define the term, and so the BIA began its analysis by looking to the dictionary for guidance. It found that "items have a 'relation' when there exists a 'logical and natural association' between them." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 992 (1994). Additionally, the Supreme Court in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), looked to the dictionary to determine that the ordinary meaning of "relating" is "a broad one—'to stand in relation; to have bearing of concern; to pertain; refer, to bring in association with or connection with.' " *Id.* at 384 (quoting BLACK'S LAW DICTIONARY 1158 (5th ed. 1979)).

Given this understanding of what the phrase "relating to" means, we must apply it to the Illinois Controlled Substances Act, 720 ILL. COMP. STAT. 570/102(y), which defines a "Look-Alike Substance" as follows:

> a substance, other than a controlled substance which (1) by overall dosage unit appearance, including shape, color, size, markings or lack thereof, taste, consistency, or any other identifying physical characteristics of the substance, would lead a reasonable person to believe that the substance is a controlled substance, or (2) is expressly or impliedly represented to be a controlled

substance or is distributed under circumstances which would lead a reasonable person to believe that the substance is a controlled substance.

This state law is focused on punishing those who distribute substances that would lead a reasonable person to believe it to be a controlled substance. Psilocybin is a controlled substance under the federal CSA. Thus, this is a state law that is related to a federal controlled substance, in the sense that violating it in the way that Desai did—by distributing something that would lead one to believe it contained Psilocybin—brings it into association with a federal controlled substance. We have recently held that possessing "a pipe for smoking marijuana is a crime within the scope of § 1182(a)(2)(A)(i)(II) because drug paraphernalia *relates to* the drug with which it is used." *Escobar Barraza v. Mukasey*, ___ F.3d ___, No. 07-2502, slip op. at 6 (7th Cir. Mar. 13, 2008) (emphasis added). It is the fact that there is a relation between the pipe and the controlled substance that justifies making the possession of the pipe illegal. So too here, it is the fact that there is a relation between the Look-Alike and the controlled substance that justifies making the distribution of the Look-Alike illegal. To put it more bluntly, the idea of distributing a "Psilocybin Look-Alike" would not even exist as a legal (or linguistic) concept without its connection to, or relationship with, Psilocybin. The simulacrum and the thing itself are always connected.

In addition to his textual argument, Desai asserts that from a policy perspective, this Court should look only to federal criminal law—not state criminal laws—when classifying removable and non-removable offenses. He directs us to our decision in *Gonzales-Gomez v. Achim*, 441 F.3d 532 (7th Cir. 2006), and the Supreme Court's decision

in *Lopez v. Gonzales*, 127 S. Ct. 625 (2006), both of which held that Congress intended the courts to utilize federal law when ascertaining whether a state offense constituted an aggravated felony for immigration purposes. He contends that this hypothetical-federal-felony approach should be applied to removability under § 1182(a)(2)(A)(i)(II) because the policy implications are the same: maintaining uniform application of immigration laws across the country.[2] On this view, state substance-distribution violations that are not mentioned in the federal CSA should not form the basis for removal under § 1182(a)(2)(A)(i)(II).

But our precedent trips up Desai's argument. In *Escobar*, we held that the hypothetical-federal-felony approach does not apply to § 1182(a)(2)(A)(i)(II). *Escobar*, ___ F.3d ___, No. 07-2502, slip op. at 2-3. A different result was reached in *Achim* and *Lopez* because a different statute was at issue. There, 8 U.S.C. § 1101(a)(43)(B) defined an "aggravated felony" to include "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18)." The Supreme Court understood the parenthetical phrase to modify the remaining words of the statute in such a way that only federal law governed the meaning of the term "aggravated felony." What is

---

[2] Desai attempts to bolster his point here by examining the statute's syntax. He claims that the phrase "relating to" modifies the word "law," and not "controlled substance." It is unclear how this assertion leads to his conclusion, because even if "relating to" modifies "law," the statute still reads as referring to the kind of state law that deals with federally controlled substances. What is important is not what "relating to" modifies, but what it means.

different in the instant case is that there is explicit reference to state law in the text of the statute, and a broadening term that bridges the state law crimes with federal definitions of what counts as a controlled substance. If Congress wanted a one-to-one correspondence between the state laws and the federal CSA, it would have used a word like "involving" instead of "relating to," or it could have written the statute the way that it wrote § 1101(a)(43)(B).

There is a similar parenthetical phrase in § 1182(a)(2)(A)(i)(II)—"as defined in section 802 of title 21." As we held recently in *Escobar*, this parenthetical can only be read to modify "controlled substance," its immediate antecedent. *See* No. 07-2502, slip op. at 2-3. So our task is simply to examine whether the state law is one relating to a federal controlled substance. This of course does not give states free rein to define their criminal laws in a manner that would allow them to effectively usurp the federal government's authority to determine who is permitted to enter and live in this country. If a state decides to outlaw the distribution of jelly beans, then it would have no effect on one's immigration status to deal jelly beans, because it is not related to a controlled substance listed in the federal CSA. But if a state, like Illinois, decides to outlaw the distribution of a substance that is purported to be and would lead a reasonable person to believe it to be "shrooms,"[3] we have explained why there is enough of a relation to the federal controlled substance to warrant removal from the United States for violating the law.

---

[3] In fact, the vast majority of states have criminalized the distribution of Look-Alike Substances. *See* Michael D. Blanchard & Gabriel J. Chin, *Identifying the Enemy in the War on Drugs*, 47 AM. U. L. REV. 557, 569 (1998).

### III. Conclusion

For the foregoing reasons, the petition for review is DENIED.