PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1975
_____

RAMONE BORROME,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Andrew Arthur
(No. A044-824-479)

_____

Argued March 6, 2012
_____

Before:  SCIRICA, AMBRO,
and VAN ANTWERPEN, Circuit Judges

(Opinion filed: July 18, 2012)

Thomas M. Griffin, Esq.    [**ARGUED**]
Surin & Griffin, P.C.
325 Chestnut Street, Suite 1305-P
Philadelphia, PA  19106

    *Counsel for Petitioner*

Eric H. Holder, Jr.
   Attorney General
Anthony C. Payne
   Senior Litigation Counsel
Yedidya Cohen, Esq.         [**ARGUED**]
Thomas W. Hussey, Esq.
Daniel I. Smulow, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

    *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

    This immigration case hinges on the relationship between prescription "drugs" and "controlled substances." The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399d, prohibits the unlicensed wholesale distribution of prescription "drugs" in interstate commerce.

2

*See* 21 U.S.C. §§ 331(t) & 353(e)(2)(A). Similarly, the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, bans the unauthorized distribution of "controlled substances." *See* 21 U.S.C. § 841(a). Some prescription "drugs" (like Oxycontin) are also "controlled substances," but many (like Lipitor, Zithromax, and thousands of other common medications) are not. Importantly, the FDCA's wholesale distribution provisions make no distinction between those prescription "drugs" that are "controlled substances" and those that are not.

With this background, we answer two questions. First, is a conviction for violating the FDCA's wholesale distribution provisions an "aggravated felony" — specifically "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)" — under 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii)? Second, are these FDCA provisions laws "relating to a controlled substance (as defined in Section 802 of Title 21)" under 8 U.S.C. § 1227(a)(2)(B)(i)? Our answer to both questions is no. Accordingly, we grant the petition for review, reverse, and vacate the order of removal.

## I.   Background

Petitioner Ramone Borrome is a citizen of the Dominican Republic, and since August 1996 has been a lawful permanent resident of the United States. In May 2002, a Special Agent with the United States Food and Drug Administration ("FDA") filed a criminal complaint against him and two other men in federal court. The next month, a grand jury returned a two-count indictment.

Count One charged the three defendants with having "unlawfully, intentionally, and knowingly engaged in the

3

unauthorized wholesale distribution in interstate commerce of prescription drugs in violation of [21 U.S.C. §§ 331(t) and 353(e)], to wit, [Borrome, and his two co-defendants] distributed the prescription drugs Combivir, Diflucan, Oxycontin, Serostim, Viagra, Zerit, [and] Zyprexa without being licensed to do so."[1]  A.R. at 102 ¶ 1.  Count Two alleged a conspiracy.  Significantly, the indictment did not charge any of the three defendants with violating the CSA.  According to his judgment of conviction, Borrome pled guilty to Count One while Count Two was dismissed on the Government's motion.[2]  The District Court sentenced him to four months' imprisonment followed by four months' home confinement.

In June 2010, Borrome was served with a Notice to Appear for immigration removal purposes.  He filed a motion to terminate, which the Immigration Judge ("IJ") denied.

In a written opinion, the IJ found Borrome removable under 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony.  The IJ concluded that the "hypothetical federal felony test" required him to compare the FDCA's wholesale distribution provisions to the CSA to determine whether Borrome's FDCA conviction is analogous to a felony under the CSA.  He noted that the CSA makes it a felony to distribute knowingly or intentionally a

---

[1] These drugs are prescribed for people with the human immunodeficiency virus (Combivir, Serostim, Zerit), fungal infections (Diflucan), severe pain (Oxycontin), schizophrenia (Zyprexa), and erectile dysfunction (Viagra).  *See* The National Center for Biotechnology Information, http://www.ncbi.nlm.nih.gov/ (last visited July 17, 2012).

[2] There is no plea agreement or plea colloquy transcript in the administrative record.

controlled substance. *See* 21 U.S.C. § 841(a)(1) & (b)(1)(C). Turning to Borrome's indictment, he further noted that Borrome pled guilty to distributing Oxycontin, which contains the Schedule II controlled substance oxycodone. *See* 21 C.F.R. § 1308.12(b)(1)(xiii). (None of the other six prescription "drugs" listed in Borrome's indictment contains "controlled substances.") Thus, the IJ reasoned, "because [Borrome's] offense involved the unauthorized distribution of a Schedule II controlled substance," it is an aggravated felony under 8 U.S.C. § 1101(a)(43)(B) pursuant to the "hypothetical federal felony test." A.R. at 40.

The IJ also found Borrome removable under 8 U.S.C. § 1227(a)(2)(B)(i) as an alien convicted of violating any law "relating to a controlled substance." After reiterating the reference in Borrome's indictment to Oxycontin, the IJ concluded that Borrome's conviction "is plainly a violation of a law relating to a controlled substance." *Id.* at 42.

In December 2010, the IJ ordered Borrome removed to the Dominican Republic. In March 2011, on the Government's motion, the Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4). Borrome timely petitioned for review. Before his counsel could file a motion to stay removal, he was removed from the United States.

## II. Jurisdiction and Standard of Review

The IJ had jurisdiction over Borrome's removal proceedings under 8 U.S.C. § 1229a. The BIA had jurisdiction to review the IJ's order of removal and its underlying denial of Borrome's motion to terminate under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15.

5

We generally have jurisdiction under 8 U.S.C. § 1252 to review final orders of removal from the BIA. But 8 U.S.C. § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable" under, among other provisions, 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an "aggravated felony" or 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of violating a law "relating to a controlled substance." We have jurisdiction, however, to determine our jurisdiction. In other words, we have jurisdiction to determine whether the necessary jurisdiction-stripping facts are present in a particular case, specifically (1) whether the petitioner is an alien and (2) whether he has been convicted of one of the enumerated offenses. *See Papageorgiou v. Gonzales*, 413 F.3d 356, 357-58 (3d Cir. 2005); *Valansi v. Ashcroft*, 278 F.3d 203, 207 (3d Cir. 2002). Furthermore, nothing in 8 U.S.C. § 1252(a)(2)(C) precludes our review of questions of law presented in a petition for review. *See* 8 U.S.C. § 1252(a)(2)(D).

"When the BIA affirms an IJ's decision without opinion, we review the IJ's decision as the final agency determination." *Konan v. Att'y Gen.*, 432 F.3d 497, 500 (3d Cir. 2005). We review *de novo*, without affording the Attorney General deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984), the purely legal questions of whether a violation of particular federal criminal statutes is an "aggravated felony" and whether those statutes are laws "relating to a controlled substance." *See Denis v. Att'y Gen.*, 633 F.3d 201, 207-09 (3d Cir. 2011); *Bobb. v. Att'y Gen.*, 458 F.3d 213, 217 n.4 (3d Cir. 2006); *Valansi*, 278 F.3d at 207-08.[3]

---

[3] "We have also previously questioned whether a BIA decision is entitled to deference when, as here, the BIA has

6

**III.    Analysis**

*A. Removability Under 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii):    Conviction for Committing an "Aggravated Felony"*

First, we must determine whether — as the IJ concluded — Borrome's conviction for violating the FDCA's wholesale distribution provisions, *see* 21 U.S.C. §§ 331(t) & 353(e)(2)(A), is an "aggravated felony" under 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii).

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). With respect to a controlled substances offense, "aggravated felony" means "illicit trafficking in a controlled substance (as defined in section 802 of Title 21) [the definitional section of the CSA], including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the Controlled

---

affirmed without opinion the decision of the IJ pursuant to 8 C.F.R. § 1003.1(e)(4)." *Ng v. Att'y Gen.*, 436 F.3d 392, 395 n.4 (3d Cir. 2006); *see also Smriko v. Ashcroft*, 387 F.3d 279, 289 n.6 (3d Cir. 2004) ("[I]t would seem to be, at the very least, an open question as to whether an IJ's decision affirmed through the streamlining process would be entitled to *Chevron* deference . . . [D]eferring to the reasoning of an IJ from which the BIA would be free to depart in other cases would seem highly problematic."); *Singh v. Att'y Gen.,* 383 F.3d 144, 152 (3d Cir. 2004) ("[T]he BIA, by affirming without opinion, gave no considered and authoritative agency-wide interpretation of the statute . . . .").

7

Substances Import and Export Act (21 U.S.C. 951 *et seq.*), or chapter 705 of title 46," which includes the maritime controlled substances laws. 18 U.S.C. § 924(c)(2).

We have held, however, that in addition to a *federal* felony conviction for violating any of § 924(c)(2)'s three statutes, a *state* controlled substances conviction may also qualify as an "aggravated felony" under § 1101(a)(43)(B). When presented with such a conviction, we have applied two independent tests to determine whether the conviction is an "aggravated felony":  the "hypothetical federal felony" test and the "illicit trafficking element" test.  *See, e.g., Evanson v. Att'y Gen.*, 550 F.3d 284, 288-90 (3d Cir. 2008); *Garcia v. Att'y Gen.*, 462 F.3d 287, 291 (3d Cir. 2006); *Gerbier v. Holmes*, 280 F.3d 297, 313 (3d Cir. 2002).  "Under the hypothetical federal felony route, we compare the offense of conviction to the federal Controlled Substances Act to determine if it is analogous to an offense under that Act." *Evanson*, 550 F.3d at 289.  "Under the illicit trafficking element test, a state felony drug conviction constitutes an aggravated felony if it contains a trafficking element." *Id.*

When applying either the "hypothetical federal felony" test or the "illicit trafficking element" test under § 1101(a)(43)(B), "and in making aggravated felony determinations in general," we presumptively start our analysis by applying the "formal categorical approach." *Garcia*, 462 F.3d at 291.  Under this approach, we "'must look only to the statutory definitions of the prior offenses,' and may not 'consider other evidence concerning the defendant's prior crimes,' including . . . 'the particular facts underlying [a] conviction[].'" *Id.* (quoting *Singh*, 383 F.3d at 147-48) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990))).  There are two instances where we may depart from the formal categorical approach when conducting an aggravated felony analysis:  (1) when "[c]onfronted with a

8

disjunctive statute of conviction, one in which there are alternative elements, . . . to determine which of the alternative elements was the actual basis for the underlying conviction," *Evanson*, 550 F.3d at 291; *see also Garcia*, 462 F.3d at 292; *Singh*, 383 F.3d at 162-63; and (2) when "the language of a particular subsection of § 1101(a)(43) — the aggravated felony enumerating statute — 'invites inquiry into the underlying facts of the case.'" *Evanson*, 550 F.3d at 291-92 (quoting *Nijhawan v. Att'y Gen.*, 523 F.3d 387, 393 (3d Cir. 2008)).

>    i.    *Can the "Hypothetical Federal Felony" Test Apply to a Conviction for Violating Federal Law?*

As a preliminary matter, we must decide whether the "hypothetical federal felony" test can apply to a conviction for violating a *federal* law, like the FDCA, that is not one of the three federal controlled substances laws enumerated in § 924(c)(2) and incorporated in § 1101(a)(43)(B). We hold that it can.[4]

---

[4] The Government does not defend the IJ's aggravated felony analysis. Instead, it asks that we remand this case to the BIA to give it "an opportunity to re-consider the immigration judge's determination that Mr. Borrome is removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii)" if we conclude that he is not removable under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of a law "relating to a controlled substance." Gov. Br. at 17. According to the Government, a remand would give the BIA "an opportunity to re-consider the [IJ's] determination that the 'hypothetical federal felony' approach applies in the current situation where the statute of conviction, the FDCA, was neither a state statute nor one of the three statutes

9

As noted, § 1101(a)(43)(B) incorporates § 924(c)(2), which defines a "drug trafficking crime" as "any felony *punishable under*" the CSA, the Controlled Substances Import and Export Act, or the maritime controlled substances laws. 18 U.S.C. § 924(c)(2) (emphasis added). In this statute, "Congress referred to felonies 'punishable under[,]' not 'convictions obtained under[,]'" the three enumerated statutes. *Gerbier*, 280 F.3d at 204 (quoting *Matter of Barrett*, 20 I. & N. 171, 175 (BIA 1990)). Therefore, § 924(c)(2) does not require an actual conviction under one of its three laws. *Id.* A conviction that is hypothetically punishable as a felony under one of § 924(c)(2)'s three statutes can also qualify as a "drug trafficking crime." *Id.* at 305, 312.

---

enumerated in 18 U.S.C. § 924 (c)(2)." *Id.* at 17 n.9. It would also give the BIA "an opportunity to re-consider the application of the categorical approach to the aggravated felony determination in this case." *Id.*

We decline the Government's request. When Borrome appealed the IJ's ruling to the BIA, the Government filed a motion for summary affirmance, claiming (among other things) that "the result reached in the decision under review is correct . . . and that the issues on appeal are squarely controlled by existing precedent and do not involve the application of precedent to . . . novel facts." A.R. at 19. The BIA obliged. Now the Government is singing a different tune. It gives no good reason why the BIA should have a second chance to consider the issues raised on this appeal. The BIA had the opportunity to consider the issues and, at the Government's insistence, chose not to do so.

Thus far the BIA and our Court have applied this "hypothetical federal felony" test only to convictions for violating state controlled substances laws. *See, e.g.*, *Evanson*, 550 F.3d at 289-293; *Garcia*, 462 F.3d at 292-93; *Gerbier*, 280 F.3d at 308-11; *Matter of Davis*, 20 I. & N. Dec. 536, 541 (BIA 1992). Ordinarily when an alien is convicted of violating a federal controlled substances law, he is convicted under the CSA. In those cases, there is no need for the hypothetical federal felony test because § 924(c)(2) makes an *actual* federal felony conviction under the CSA a "drug trafficking crime," and thus, via § 1101(a)(43)(B), an "aggravated felony." But in this case the Government argues that the FDCA's wholesale distribution laws create the same bases for removability as § 924(c)(2)'s three controlled substances laws.[5]

Notwithstanding the unusual circumstances of this case, we conclude that the "hypothetical federal felony" test can apply to a conviction for violating a federal law other than those enumerated in § 924(c)(2). There is nothing in the text of either § 1101(a)(43)(B) or § 924(c)(2) that limits application of the "hypothetical federal felony" test to state controlled substances convictions. In fact, § 1101(a)(43) specifically indicates that the term "aggravated felony" applies to an offense "whether in violation of Federal or State law." When applying the test, the key inquiry is simply whether the alien's conviction is hypothetically punishable as a felony under any of the three controlled substances laws listed in § 924(c)(2).

---

[5] We have found no precedent for using a conviction under 21 U.S.C. §§ 331(t) and 353(e)(2)(A) as a basis for removability.

11

## ii. *Does Borrome's FDCA Conviction Meet the "Hypothetical Federal Felony" Test?*

Having determined that the "hypothetical federal felony" test can apply in this case, we turn to whether it is met. To do so, we first consider whether the presumption in favor of the categorical approach applies to our analysis. It is well established that the aggravated felony enumerating statute at issue here, § 1103(a)(43(B), does not permit departure from the categorical approach nor does it invite inquiry into the underlying facts of a conviction. *See Evanson*, 550 F.3d. at 292; *Garcia*, 462 F.3d at 292. If we were to depart from the categorical approach, we would have to find justification for that departure in Borrome's statutes of conviction. We conclude, however, that the FDCA's wholesale distribution statutes, 21 U.S.C. §§ 331(t) and 353(e)(2)(A), do not permit departure from the formal categorical approach because they are not "disjunctive" statutes that define distinct offenses. They are instead a single offense that is not categorically "punishable under" any of § 924(c)(2)'s three controlled substances statutes. Therefore, a conviction under these FDCA provisions fails the "hypothetical federal felony" test.

We begin by unraveling what Borrome's statutes of conviction, 21 U.S.C. §§ 331(t) and 353(e), actually prohibit. In pertinent part, § 331(t) prohibits "the distribution of drugs in violation of section 353(e) of this title."[6] Section

---

[6] A "drug" means

> (A) articles recognized in the official United States Pharmacopeia, official Homeopathic Pharmacopeia of

353(e)(2)(A), in turn, provides that "[n]o person may engage in the wholesale distribution in interstate commerce of drugs subject to subsection (b) of this section in a State unless such person is licensed by the State in accordance with the guidelines issued under subparagraph (B)."  "The term 'wholesale distribution' means distribution of drugs subject to subsection (b) of this section to other than the consumer or patient," with some exceptions not relevant here.  21 U.S.C. § 353(e)(3)(B).  Section 353(b)(1) — the relevant part of the "subsection (b) of this section" to which §§ 353(e)(2)(A) and 353(e)(3)(B) refer — subjects to certain prescription requirements

> [a] drug intended for use by a man which (A) because of its toxicity or other potentiality for harmful effect, or the method of its use, or

---

> the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).

21 U.S.C. § 321(g)(1).

13

the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or (B) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug.

For simplicity, these are called prescription drugs.

Section 353(b)(1) does not provide a list of specific drugs subject to its prescription requirements. Whether a drug is a prescription drug by virtue of § 353(b)(1)(A) is a question of fact for the jury. *See United States v. Munoz*, 430 F.3d 1357, 1367 (11th Cir. 2005). The FDA does, however, publish in what is colloquially known as the "Orange Book" a list of what are prescription drugs by virtue of § 353(b)(1)(B) because they are "limited by an approved application under section 355 of [title 21] to use under the professional supervision of a practitioner licensed by law to administer such drug." *See U.S. Food & Drug Admin., U.S. Dep't of Health & Human Servs., Approved Drug Products with Therapeutic Equivalence Evaluations* 3-1 to 3-424 (32d ed. 2012), *available at* http://www.fda.gov/downloads/Drugs/DevelopmentApproval Process/UCM071436.pdf.

The term "controlled substance" appears nowhere in §§ 331(t) and 353(e). A "controlled substance" is defined in the CSA to mean "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). A list of "controlled

14

substances" is provided in 21 U.S.C. § 812 and supplemented by 21 C.F.R. §§ 1308.11–.15. The only way to discern an overlap between prescription drugs and controlled substances is to compare the list of prescription drugs in the FDA's Orange Book and the list of controlled substances in the CSA and its corresponding regulations. When doing so, it is clear that, while some prescription drugs contain chemicals that are also regulated as "controlled substances" under the CSA, many do not. For example, Oxycontin — one of the seven drugs listed in Borrome's indictment — is a prescription drug, *see Approved Drug Products with Therapeutic Equivalence Evaluations*, *supra*, at 3-324, and it contains the "controlled substance" oxycodone, *see* 21 C.F.R. § 1308.12(b)(1)(xiii). In contrast, Viagra — another of the seven drugs listed in Borrome's indictment — is a prescription drug, *see Approved Drug Products with Therapeutic Equivalence Evaluations* at 3-371, but it does not contain a "controlled substance."

Although some prescription drugs do contain controlled substances, §§ 331(t) and 353(e)(2)(A) make no distinction between convictions involving prescriptions drugs that do contain controlled substances and those that do not. In other words, under §§ 331(t) and 353(e)(2)(A), a conviction for the unlicensed wholesale distribution of Viagra is no different than a conviction for the unlicensed wholesale distribution of Oxycontin.

This is the pivot point for our "hypothetical federal felony" analysis. When making aggravated felony determinations under § 1101(a)(43)(B), "[w]e must rely only on 'what the convicting court must necessarily have found to support the conviction.'" *Jeune v. Att'y Gen.,* 476 F.3d 199, 205 (3d Cir. 2007) (quoting *Steele v. Blackman,* 236 F.3d 130, 135 (3d Cir. 2001)). When Borrome pled guilty to violating the FDCA's wholesale distribution provisions, the

15

convicting court did not necessarily have to find whether the prescriptions drugs involved also contained controlled substances. Such a finding would be irrelevant under §§ 331(t) and 353(e)(2)(A) because those statutes define a single offense, not separate and distinct offenses. Therefore, §§ 331(t) and 353(e)(2)(A) do not permit departure from the formal categorical approach.

When we apply the categorical approach, we see daylight between the elements of a CSA controlled substances distribution conviction and an FDCA prescription drug distribution conviction. Under the CSA, it is unlawful to "knowingly or intentionally . . . distribute . . . a controlled substance." 21 U.S.C. § 841(a)(1). Under the FDCA, it is unlawful to "engage in the wholesale distribution in interstate commerce of [prescription] drugs" without a proper license. 21 U.S.C. § 353(e)(2)(A). As our discussion above demonstrates, prescription drugs and controlled substances do not always go hand-in-hand. If the Government successfully proves the elements for a conviction under 21 U.S.C. § 353(e)(2)(A), it does not necessarily prove the elements for a conviction under 21 U.S.C. § 841(a)(1). Because a conviction under the FDCA for the unlicensed wholesale distribution of prescription drugs is not categorically "punishable under" the CSA or § 924(c)(2)'s other controlled substances laws, Borrome's conviction fails the "hypothetical federal felony test."

### iii.    The "Illicit Trafficking" Element Test

Neither the Government before us, nor the IJ, contends that Borrome's conviction meets the "illicit trafficking element" test. That test requires that a felony contain a "trafficking element," meaning "the unlawful trading or dealing of a controlled substance." *Jeune,* 476 F.3d at 202 (quoting *Gerbier*, 280 F.3d at 305). Because, as discussed

16

above, §§ 331(t) and 353(e)(2)(A) do not permit departure from the categorical approach and they do not require the distribution of a controlled substance, they must necessarily fail the "illicit trafficking element" test as well.

B. *Removability Under 8 U.S.C. § 1227(a)(2)(B)(i): Conviction for Violating Any Law "Relating to a Controlled Substance"*

Next, we consider whether Borrome was removable under 8 U.S.C. § 1227(a)(2)(B)(i). That section of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537, provides that:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) *any law or regulation* of a State, the United States, or a foreign country *relating to a controlled substance* (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

(Emphases added.)

Unless an alien claims that the basis of his alleged removability is "a single offense involving possession for one's own use of 30 grams or less of marijuana," § 1227(a)(2)(B)(i) does not ask courts to scour an alien's indictment and sniff out a controlled substance, or otherwise to look to the underlying facts of an alien's conviction, to determine whether the alien is removable. Such an inquiry

17

would be irrelevant. The important statutory phrase is "relating to a controlled substance," and it modifies "law or regulation." *See Mielewczyk v. Holder*, 575 F.3d 992, 994 (9th Cir. 2009); *see also Mizrahi v. Gonzales*, 492 F.3d 156, 159 (2d Cir. 2007) (noting that 8 U.S.C. § 1182(a)(2)(A)(i)(II), which is the inadmissibility counterpart to 8 U.S.C. § 1227(a)(2)(B)(i), "applies only if the 'law or regulation' violated relates to controlled substances"). An analysis of the laws or regulations of conviction is required. Therefore, our task is to determine whether the FDCA's wholesale distribution provisions, 21 U.S.C. §§ 331(t) and 353(e)(2)(A), are laws "relating to a controlled substance," not (as the IJ seems to have believed) whether the facts of Borrome's conviction "relat[e] to a controlled substance."[7]

The INA does not define the phrase "relating to." But the BIA has interpreted it expansively: "[t]he 'relating to' concept has a broad ordinary meaning, namely, 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Matter of Espinoza*, 25 I. & N. Dec. 118, 120 (BIA 2009) (quoting Black's Law Dictionary 1158 (5th ed. 1979) (other quotation marks omitted)); *see also Matter of Beltran*, 20 I. & N. Dec. 521, 526 (BIA 1992) ("The phrase 'relating to' . . . has long been construed to have broad coverage."). The Supreme Court, when interpreting the phrase "relating to" in the Airline Deregulation Act, has also adopted the broad Black's Law Dictionary definition. *See Morales v. Trans World*

---

[7] As discussed above, the FDCA wholesale distribution provisions are non-divisible statutes that define a single offense. Therefore, we apply the formal categorical approach to determine whether they are laws "relating to a controlled substance."

*Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)).

We too have explained, in the context of another provision of the INA, that the phrase "relating to" is "to be read expansively[,] and 'must not be strictly confined to its narrowest meaning.'" *Denis*, 633 F.3d at 209 (quoting *Drakes v. Zimski*, 240 F.3d 246, 249 (3d Cir. 2001)). As we have said, "[t]he term 'relate' means 'to show or establish a logical or causal connection between.'" *Bobb*, 458 F.3d at 219 (quoting Webster's Third New International Dictionary (Unabridged) 1916 (1991)). Other Courts of Appeals have given the phrase similarly broad readings. *See Mielewczyk*, 575 F.3d at 994-95 (quoting Webster's dictionary definition with approval); *Desai v. Mukasey*, 520 F.3d 762, 764 (7th Cir. 2008) (same).

As the breadth of the phrase "relating to" suggests, a law need not require for its violation the actual involvement of a controlled substance in order to "relat[e] to" a controlled substance. "If Congress wanted a one-to-one correspondence between the [laws of conviction] and the federal CSA, it would have used a word like 'involving' instead of 'relating to,' or it could have written the statute the way that it wrote § 1101(a)(43)(B) [the aggravated felony controlled substances statute]." *Desai*, 520 F.3d at 766.[8]

In this vein, the BIA and several of our sister Courts of Appeals have held that a law prohibiting the possession or use of drug paraphernalia is a law "relating to a controlled substance." *See Matter of Espinoza*, 25 I. & N. Dec. at 118;

---

[8] For example, to achieve this correspondence, Congress could have made removable any alien convicted of an offense "involving a controlled substance (as defined in section 802 of Title 21)" or an offense "punishable under" the CSA.

*see also Alvarez-Acosta v. Att'y Gen.*, 524 F.3d 1191, 1196 (11th Cir. 2008); *Escobar Barraza v. Mukasey*, 519 F.3d 388, 390-91 (7th Cir. 2008); *Luu-Le v. I.N.S*, 224 F.3d 911, 914-16 (9th Cir. 2000). Paraphernalia statutes relate to controlled substances, even though they prohibit the possession of instruments rather than controlled substances themselves, because "the possession of an item intentionally used for manufacturing, using, testing, or enhancing the effect of a controlled substance necessarily pertains to a controlled substance." *Espinoza*, 25 I. & N. Dec. at 120. The Ninth Circuit has reached this conclusion notwithstanding that the definition of the term "drug" as used in the California drug paraphernalia statute "does not map perfectly" with the definition of "controlled substance" under the CSA. *See Luu-Le*, 224 F.3d at 915.

Similarly, the Seventh Circuit has held that a statute prohibiting the unlawful delivery of a "Look-Alike Substance" is a law "relating to a controlled substance." *Desai*, 520 F.3d at 764-66. The defendant in that case was convicted of selling chocolates purporting to contain, but not actually containing, the hallucinogenic controlled substance Psilocybin. *Id.* at 763. He was charged under Illinois law with the unlawful delivery of a "Look-Alike Substance," defined as a substance which (1) by its identifying physical characteristics "would lead a reasonable person to believe that the substance is a controlled substance, or (2) is expressly or impliedly represented to be a controlled substance or is distributed under circumstances which would lead a reasonable person to believe that the substance is a controlled substance." *Id.* at 764-65 (quoting 720 Ill. Comp. Stat. 570/102(y)). The Court explained that the state law is one "related to" a federal controlled substance because distributing something that would lead one to believe it contained a federal controlled substance brings the state law

20

"into association with a federal controlled substance." *Id.* at 765.

> It is the fact that there is a relation between the Look-Alike and the controlled substance that justifies making the distribution of the Look-Alike illegal. To put it more bluntly, the idea of distributing a "Psilocybin Look-Alike" would not even exist as a legal (or linguistic) concept without its connection to, or relationship with, Psilocybin. The simulacrum and the thing itself are always connected.

*Id.* Therefore, according to the Seventh Circuit, the law relates to a controlled substance, notwithstanding that a "Look-Alike" itself is not a "controlled substance," as there is "enough of a relation to the federal controlled substance to warrant removal from the United States for violating the law." *Id.* at 766.

The drug paraphernalia cases and the Seventh Circuit's decision in *Desai* convince us that the phrase "any law . . . relating to a controlled substance" reaches those laws that do not require the actual involvement of a controlled substance for a conviction. But we are equally convinced that a law does not automatically come within the ambit of that phrase simply because a conviction *may* involve a controlled substance. Another section of the FDCA provides a *reductio ad absurdum*.

Under 21 U.S.C. § 353(d)(3)(B), "[d]rug manufacturers or authorized distributors of record shall store

21

drug samples under conditions that will maintain their stability, integrity, and effectiveness and will assure that the drug samples will be free of contamination, deterioration, and adulteration" when distributing the drug samples (unless they use mail or common carrier). Distributing drug samples in violation of § 353(d), or otherwise failing to comply with its requirements, is punishable by not more than one year imprisonment, a $1,000 fine, or both. *See* 21 U.S.C. §§ 331(t) & 333(a). If we were to give the phrase "relating to" a boundless interpretation, we might conclude that § 353(d)(3)(B) is a law "relating to" a controlled substance because it regulates some chemicals that also happen to contain "controlled substances." It would be difficult to accept, however, that a non-citizen authorized distributor who fails to transport a sample of Oxycontin under the proper temperature or in the proper container, in violation of 21 U.S.C. § 353(d)(3)(B), could be deported from the United States simply because Oxycontin — in addition to being a prescription "drug"— also happens to contain a "controlled substance." The coincidental possibility that a controlled substance might be involved with the violation of a law or regulation is not enough to make that law or regulation one "relating to a controlled substance" for deportability purposes under § 1227(a)(2)(B)(i).

Though we must interpret the phrase "relating to a controlled substance" broadly, that phrase must have limits, lest it be bent beyond all logical meaning. *See Denis*, 633 F.3d at 212 (noting that we must interpret the phrase "'relating to' broadly, seeking a logical or causal connection"). We believe that bringing the FDCA's wholesale distribution provisions within the scope of that phrase would extend it beyond its breaking point for two related reasons. First, the connection between §§ 331(t), 353(e)(2)(A), and illicit controlled substance-related activity, is too attenuated. Second, §§ 331(t) and 353(e)(2)(A)

22

criminalize a substantial swath of conduct with no nexus to controlled substances as defined in 21 U.S.C. § 802.

In this case there is undeniably *a* connection between the FDCA wholesale distribution provisions and illicit controlled substance-related activity: the FDCA prohibits the unlicensed wholesale distribution of prescription "drugs," the CSA in turn criminalizes the unauthorized distribution of "controlled substances," and some prescription "drugs" are also "controlled substances." But that nexus, though simply stated, is not at all evident from the face of §§ 331(t) and 353(e) and only emerges after a journey through other laws, regulations, and governmental publications. To repeat, §§ 331(t) and 353(e) do not use the term "controlled substance" nor do they list specific prescription drugs that are in fact controlled substances. To see the connection between prescription drugs and controlled substances, we must rummage through the 400-plus page "Prescription Drug Product List" in the FDA's Orange Book, see *Approved Drug Products with Therapeutic Equivalence Evaluations*, *supra* at 3-1 to 3-424, and then hunt for a match in the roughly 100 pages of schedules of controlled substances in the Code of Federal Regulations, *see* 21 C.F.R. §§ 1308.11–.15. Even if we complete this odyssey, the fruits of our labor are for naught. It is inconsequential under §§ 331(t) and 353(e)(2)(A) if the prescription drugs at issue are also controlled substances "(as defined in section 802 of Title 21)." Thus, the "relationship" between §§ 331(t) and 353(e)(2)(A) and "controlled substances" is a mere coincidence devoid of any legal significance under the FDCA.

Moreover, the FDCA wholesale distribution provisions, which (to repeat) define a single offense and not distinct and separate offenses, prohibit a wide range of behavior completely unconnected to controlled substances.

23

The statutes are blind to whether a particular prosecution involves highly addictive prescription painkillers, or relatively benign prescription shampoos, topical creams, or eye drops. In this regard, we believe §§ 331(t) and 353(e)(2)(A) to be analogous to a law criminalizing the receipt of stolen property. In Pennsylvania, for example, a person may be convicted of theft if he intentionally receives property knowing that it has been stolen. *See, e.g.*, Pa. C.S.A. § 3925(a). Whether that stolen property includes Oxycontin or cotton candy is inconsequential under the statute. Like §§ 331(t) and 353(e)(2)(A), the Pennsylvania receipt-of-stolen-property statute reaches countless activities that are completely unconnected to controlled substances. Classifying such a law as one "relating to a controlled substance" would stretch too far the bounds of the phrase "relating to."

\* \* \* \* \*

We hold that (1) a conviction for violating the FDCA's wholesale distribution provisions, *see* 21 U.S.C. §§ 331(t) & 353(e)(2)(A), is not an "aggravated felony" — specifically "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)" — under 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii), and (2) the FDCA's wholesale distribution provisions are not laws "relating to a controlled substance (as defined in Section 802 of Title 21)" under 8 U.S.C. § 1227(a)(2)(B)(i).[9]

_____

[9] We note that our holding today should have very little effect on the vast majority of aliens convicted in federal court for violating federal controlled substances laws. Inexplicably, Borrome was not charged with violating the CSA, even though one of the seven prescription drugs listed in his indictment was a controlled substance. If he had been

24

Accordingly, we grant the petition for review, reverse, and vacate the order of removal.

---

convicted of violating the CSA, he almost certainly would be removable.