**Sidita SOKOLI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

Nos. 05–1005, 05–2637, 12–1739.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 26, 2012.

Filed Oct. 2, 2012.

Theodore N. Cox, Esq., New York, NY, for Petitioner.

Thomas W. Hussey, Esq., Michael P. Lindemann, Esq., Jeffrey L. Menkin, Esq., John D. Williams, Esq., United States Department of Justice, Washington, DC, K.T. Newton, Esq., Office of United States Attorney, Philadelphia, PA, for Attorney General of the United States.

Before: RENDELL, VANASKIE and GARTH, Circuit Judges.

OPINION

PER CURIAM.

Nearly eight years after the Board of Immigration Appeals ("BIA") directed that Sidita Sokoli be deported to her native Albania—during which time four subsequent agency decisions were issued and a total of three petitions for review were filed—we are finally asked to decide whether to endorse the final order of removal in this case. Having carefully considered the original administrative record, the supplemental administrative record, the original round of briefs, and the supplemental briefs, we will deny all three of Sokoli's petitions for review.

I. *Background*

Sokoli was last admitted to the United States in July 2000, so that she could continue to pursue an undergraduate degree from St. John's University in New

York.[1] Because Sokoli did not immediately depart from the country after graduation, she received a Notice to Appear charging her with a failure to maintain status, in violation of 8 U.S.C. § 1227(a)(1)(C)(i). JA Vol. 2 at 416. She conceded removability but requested asylum, withholding of removal, and protection under the Convention Against Torture.

Sokoli primarily claimed that if removed she would be persecuted on account of her father's affiliation with the Democratic Party in Albania. At a hearing before the Immigration Judge ("IJ"), Sokoli testified that her early years in Albania were spent living in a village of forty "persecuted families," but that she was able to return to her hometown of Shkoder following the collapse of the Communist regime in 1990. JA Vol. 2 at 100–02. Sokoli testified that her family's "political background" made it difficult to pursue a good education in Albania, which is why she set out to attend college in the United States. JA Vol. 2 at 105. Referring to her college years, Sokoli testified that during one summer sojourn in Albania she and her husband received threatening phone calls and letters. She also testified about an incident where three police officers came to the family home with a warrant to search for weapons, one of the officers grabbed Sokoli while telling her father that they could take her away "and do whatever ... with her," and another hit Sokoli's father over the head with a gun when he tried to wrest his daughter from the first officer. JA Vol. 2 at 113.

The IJ denied Sokoli all relief save voluntary departure. The IJ noted "the incident in which a rogue police officer ... [struck Sokoli's] father" and made "crude sexual threat[s] towards" Sokoli, but determined that those acts did not rise to the level of persecution. JA Vol. 2 at 63. The IJ found that none of Sokoli's family members in Albania had been "harmed or targeted" since that incident. JA Vol. 2 at 61. In addition, the IJ found that the background materials indicated an improved political climate in Albania, despite claims that the ruling Socialist Party was merely a "successor in interest" to the old, repressive Communist regime. JA Vol. 2 at 63.

In December 2004, the BIA affirmed the IJ's decision without issuing its own opinion and ordered that Sokoli be removed to Albania. The BIA's order noted that Sokoli had been granted voluntary departure, and it warned her that a failure to depart the country within thirty days would carry certain penalties. Sokoli then filed her first petition for review, which was docketed at No. 05–1005.

Around the same time, Sokoli retained new counsel and filed a motion to reopen removal proceedings. She submitted with the motion a copy of her husband's proposed Form I–130 Petition for Alien Relative and claimed that she was entitled to an adjustment of status.[2] The motion stated that "[s]upporting documents and materials will be submitted within one month." JA at 7. However, no supporting documents were filed.

In an April 2005 decision, the BIA denied the motion to reopen on two grounds. First, the BIA noted that Sokoli failed to submit necessary documentation, including an application for adjustment of status and an affidavit of eligibility for relief. *See* 8 C.F.R. § 1003.2(c). Second, the BIA held that, even if Sokoli had submit-

---

1. Sokoli first entered the United States—on an F-1 student visa—in December 1998. She made briefs visits back to Albania during her first two summer recesses.

2. Sokoli's husband—also a native of Albania—acquired status in the United States as an asylee in 1998. Supp. JA Vol. 2 at 54–55. The couple wed in 1999.

ted the required documentation, she would be statutorily barred from receiving an adjustment of status under 8 U.S.C. § 1229c(d), because she failed to comply with the voluntary departure provision of the final removal order. Sokoli filed her second petition for review, and it was docketed at No. 05-2637.

Thereafter, we granted Sokoli's unopposed motion to stay consideration of her two petitions for review pending adjudication of her husband's application for a green card. We lifted the stay approximately two years later and, subsequently, denied Sokoli's motion to stay removal pending disposition of her petitions for review. Next, the BIA denied Sokoli's second motion to reopen, concluding that the motion was untimely and that *sua sponte* reopening was not justified by the circumstances. Sokoli unsuccessfully moved the BIA for reconsideration, but has not petitioned for review, of that decision.

Sokoli then filed her third motion to reopen, which the BIA denied on three grounds: (1) the motion was time-barred; (2) the motion was number-barred; and (3) the motion was "not supported by any affidavits or material new evidence to establish the respondent's claim of past persecution." Supp. JA Vol. 2 at 4. The BIA declined to exercise its *sua sponte* reopening power. A third petition for review from Sokoli, which was docketed at No. 12-1739, followed and was consolidated with Nos. 05-1005 and 05-2637. The parties have not made us aware of any additional agency filings by Sokoli, and this matter is now ripe for disposition.

## II.  *Standards of Review*[3]

Where, as here, the BIA affirms the IJ's decision without opinion, we review the

IJ's decision only. *See Borrome v. Att'y Gen.*, 687 F.3d 150, 154 (3d Cir.2012). The IJ's legal conclusions are reviewed *de novo*, subject to established principles of deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Employing a substantial evidence standard to test the IJ's factual findings, we deem those findings conclusive unless a reasonable adjudicator would be compelled to find to the contrary. *See Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir.2011).

We review for abuse of discretion the BIA's denial of a motion to reopen. *See Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 (3d Cir.2011). "We give the BIA's decision broad deference and generally do not disturb it unless it is arbitrary, irrational, or contrary to law." *Id.* (quotation marks omitted).

## III.  *Discussion*

Sokoli's petitions for review challenge three separate agency decisions. We will address her challenges in chronological order.

### A.  *No. 05-1005*

Sokoli claims that the IJ erred in failing to grant her asylum. Specifically, Sokoli contends that her early years in a village of "persecuted families," the threatening phone calls and letters she received while on a trip to Albania during college, and the incident with the three police officers during that same trip, demonstrate that she suffered past persecution. Sokoli also contends that, with respect to future persecution, the IJ gave "insufficient weight" to

---

**3.** We have jurisdiction to review final orders of removal and decisions of the BIA that deny motions to reopen. *See* 8 U.S.C. § 1252(a)(1);

*Castro v. Att'y Gen.*, 671 F.3d 356, 364 (3d Cir.2012).

the country conditions evidence in the record. Pet'r's Br. at 11.

■ We will deny this petition for review. Even if we were inclined to agree with Sokoli's contention that she demonstrated past persecution—and we are not so inclined [4]—we would nevertheless conclude that substantial evidence supports the IJ's findings that any presumption of persecution was rebutted by changed conditions, *see* 8 C.F.R. § 1208.13(b)(1), and that Sokoli lacked an objectively reasonable fear of future persecution on account of an imputed association with the Albanian Democratic Party.

With regard to changed country conditions, the IJ found that the political climate in Albania was much improved since the fall of communism. The background evidence supports that finding. For example, the State Department report for 2002 indicates that "elections ... have improved over past elections in terms of the conduct of the campaign...." JA Vol. 2 at 139. The Albanian Constitution "provides for the right of association, and the Government generally respected this right." JA Vol. 2 at 144. In addition, and according to an "Immigration & Nationality Directorate," "[t]he Democratic Party remains a legitimate political party that is free to campaign and carry out lawful ac-

tivities." JA Vol. 2 at 168. The State Department report also notes that crimes against Democratic Party members were investigated by the Albanian government; in particular, "four suspects were convicted and given sentences ranging from 2½ years to life in prison" for "the 1998 murder of DP leader Azem Hajdari." JA Vol. 2 at 140. And "[t]here were no reports of politically motivated disappearances." JA Vol. 2 at 140.

With regard to future persecution, Sokoli failed to demonstrate either an individualized risk of persecution or a pattern or practice of persecution of Albanian Democratic Party members. *See* 8 C.F.R. § 1208.13(b)(2)(iii). In addition, we consider conclusive the IJ's factual finding that Sokoli's family has lived harm-free in Albania in the years postdating Sokoli's last admission to the United States. *See Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir.2005) ("We agree that when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished.").

Therefore, we discern no basis to disturb the IJ's decision as adopted by the BIA.

---

4. The IJ's findings with regard to past persecution are supported by substantial evidence. Sokoli provided little evidence to support a conclusion that growing up in what she characterizes as an "internment camp" constituted persecution. The habitability issues described—no electricity, no warm water, a leaky roof, and the fact that she "could only eat three times a day," JA Vol. 2 at 103—lack the requisite severity as a matter of law. *See Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993) (accepting BIA's definition of persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," and noting that "the concept of persecution does

not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional"). Regarding the threatening phone calls and letters during her second trip back to Albania, the threats do not appear to have been imminent or realized. *See Chavarria v. Gonzalez*, 446 F.3d 508, 518 (3d Cir.2006) ("[W]e have refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien.") Finally, the incident with the three police officers, while understandably traumatic, did not result in actual harm to Sokoli.

### B. *No. 05–2637*

Sokoli claims that the BIA abused its discretion in denying her first motion to reopen. She concedes, however, that she "did not submit an application for adjustment of status," Pet'r's Br. at 8, or any evidence purporting to demonstrate that her marriage was bona fide, with the exception of her husband's yet-to-be-approved Form I–130 Petition for Alien Relative. Sokoli nevertheless argues that the BIA should have deemed the I–130 Petition a sufficient basis to reopen. In addition, Sokoli acknowledges but provides no real rejoinder to the BIA's invocation of 8 U.S.C. § 1229c(d)(1)(B) as a temporary bar to her status-adjustment request.

■ We will deny this petition for review. The BIA did not abuse its discretion insofar as it denied the motion to reopen on prima facie grounds. An unadjudicated I–130 Petition (including several G–325A forms) does not give the BIA sufficient information to assess an alien's eligibility for adjustment of status. *Cf. Hashmi v. Att'y Gen.*, 531 F.3d 256, 260 n. 4 (3d Cir.2008) (indicating that under *Matter of Velarde–Pacheco*, 23 I. & N. Dec. 253 (BIA 2002), a motion to reopen based on a post-removal-order I–130 Petition is supposed to demonstrate, *inter alia*, that the alien's marriage is bona fide). Moreover, Sokoli did not attach to her motion a proposed adjustment of status application, in contravention of 8 C.F.R. § 1003.2(c)(1). *See In re Yewondwosen*, 21 I. & N. Dec.

1025, 1026 (BIA 1997) (en banc) (noting that a "failure to submit an application for relief ... will typically result in the Board's denial of the motion [to reopen].").

We also conclude that the BIA did not abuse its discretion in denying Sokoli's first motion to reopen insofar as it relied on 8 U.S.C. § 1229c(d)(1)(B), which provides that "if an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien ... shall be ineligible, for a period of ten years, to receive [cancellation of removal or adjustment of status]." The BIA's December 13, 2004 removal order permitted Sokoli thirty days—until January 12, 2005—to voluntarily depart the United States. Sokoli did not depart, did not withdraw her request for voluntary departure during the relevant thirty-day period, and did not file her first motion to reopen until March 14, 2005. JA at 3. Therefore, with the voluntary departure noncompliance penalties in effect, Sokoli was barred from adjusting her status as a matter of law.

In sum, the BIA did not abuse its discretion in denying Sokoli's first motion to reopen.[5]

### C. *No. 12–1739*

Sokoli claims that "the BIA erred and abused its discretion in denying [her third] motion to reopen based on a denial of her

---

**5.** In the closing paragraph of her supplemental brief, Sokoli claims that her first petition for review, filed within the thirty-day voluntary departure period, should have been construed as a request to extricate herself from the voluntary departure grant and the associated penalties for noncompliance. Pursuant to 8 C.F.R. § 1240.26(i), "[i]f, prior to departing the United States, the alien files a petition for review ... any grant of voluntary departure shall terminate automatically upon the filing of the petition[.]" This regulation is

intended to protect aliens like Sokoli from the noncompliance penalties should they desire further administrative or judicial review of the final order of removal. *Patel v. Att'y Gen.*, 619 F.3d 230, 234 n. 5 (3d Cir.2010); *Sandie v. Att'y Gen.*, 562 F.3d 246, 255 n. 5 (3d Cir.2009). The regulation, however, did not take effect until January 2009, *see Patel*, 619 F.3d at 233, and it is not retroactive. Therefore, we are unable to construe Sokoli's first petition for review as a withdrawal from voluntary departure.

right to present evidence of past persecution during her merits hearing, a prejudicial denial of due process." Pet'r's Supp. Br. at 20. Sokoli also claims that the BIA should have reopened removal proceedings because she is entitled to so-called *Matter of Chen* asylum.[6] Because Sokoli's claims ignore the substance of the BIA's February 28, 2012 decision, we will deny this petition for review.

We first observe that motions to reopen must be filed within ninety days from the date "the final administrative decision was rendered," and only one such motion is allowed under the applicable regulation. 8 C.F.R. § 1003.2(c)(2). These time and number limitations do not apply, though, when the motion to reopen relies on "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

■ Sokoli's third motion to reopen—filed years after the issuance of the final order of removal—was plainly time- and number-barred under the regulations. Sokoli does not suggest otherwise, though she claims, without pointing to any germane authority, that the limitations do not apply in her case. We reject that proposition. To the extent Sokoli is attempting to challenge procedural deficiencies with respect to the IJ's alleged failure to develop the record, we deem that challenge unexhausted, despite Sokoli's attempt to couch it in terms of due process. *See Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir.2005). Furthermore, and as the BIA properly noted, Sokoli failed to submit any new evidence in order to satisfy

§ 1003.2(c)(3)(ii). Finally, we lack jurisdiction to review the BIA's refusal to reopen proceedings *sua sponte*. *See Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir.2003).

Accordingly, Sokoli has failed to demonstrate that the BIA abused its discretion in denying her third motion to reopen.

### IV. *Conclusion*

For the reasons given in this opinion, we will deny each of Sokoli's three petitions for review.

---

**6.** *Matter of Chen* asylum is a strand of "humanitarian" asylum that is available when "[t]he applicant has demonstrated compelling reasons for being unwilling or unable to re-

turn to the country arising out of the severity of the past persecution." 8 C.F.R. § 1208.13(b)(1)(iii)(A); *see Pllumi*, 642 F.3d at 162 n. 12.